B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBORAH DONOGHUE,

          Plaintiff,

     - against -

LOCAL.COM CORPORATION and
HEARST COMMUNICATIONS, INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HEARST COMMUNICATIONS, INC.

        Cross-claimant,

     - against -

LOCAL.COM,

        Cross-defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 CIV. 8550 (L.S.)

**ANSWER AND
CROSS-CLAIMS OF
HEARST COMMUNICATIONS, INC**

Defendant Hearst Communications, Inc. ('Hearst Communications"), by its attorneys, Greenberg Traurig, LLP, for its answer to the First Amended Complaint (the "FAC") states:

1.     Paragraph 1 of the FAC sets forth a legal conclusion to which no responsive pleading is required.  To the extent paragraph 1 is deemed an allegation of fact, denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the FAC.

2.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the FAC, except admits that Local.com Corporation

("Local.Com"), is a Delaware corporation whose principal offices are located at 1 Technology Drive, Building G, Irvine, California 92618.

3.    Paragraph 3 of the FAC sets forth a legal conclusion to which no responsive pleading is required.    To the extent paragraph 3 is deemed an allegation of fact, denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the FAC.

4.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 of the FAC.

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the FAC.

6.    Paragraph 6 of the FAC sets forth a legal conclusion to which no responsive pleading is required.    To the extent paragraph 6 is deemed an allegation of fact, denies the allegations of paragraph 6 of the FAC, and refers Plaintiff and the Court to the Form 10-Q filed by Local.com with the Securities & Exchange Commission on August 7, 2007, for the number of outstanding shares of Local.com on August 1, 2007, a true and correct copy of which is attached hereto as Exhibit A, and is incorporated by reference.

7.    Admits the allegations of paragraph 7 of the FAC.

8.    Denies the allegations of paragraph 8 of the FAC.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the FAC, except admits that a demand for prosecution was received by Local.com sometime in the first week of August 2007.

2

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the FAC, except admits that more than 60 days have expired from Local.com's receipt of a demand for prosecution in August 2007 and the filing of the FAC.

11.    Admits the allegations of paragraph 11 of the FAC.

12.    Admits the allegations of paragraph 12 of the FAC.

13.    Denies the allegations of paragraph 13 of the FAC, except admits that the Consent was executed by Local.com and Hearst Communications, a true and correct copy of which is attached hereto as Exhibit B, and is incorporated by reference.

14.    Paragraph 14 sets forth a legal conclusion to which no responsive pleading required. To the extent that paragraph 14 of the FAC is deemed an allegation of fact, denies the allegations of Paragraph 14 except admits that a Form 8-K was submitted by Local.com to the Securities & Exchange Commission on August 1, 2007, a true and correct copy of which is attached hereto as Exhibit C, and is incorporated by reference.

15.    Paragraph 15 of the FAC sets forth a legal conclusion to which no responsive pleading is required. To the extent paragraph 15 is deemed an allegation of fact, denies the allegations of paragraph 15 of the FAC.

16.    Paragraph 16 of the FAC sets forth a legal conclusion to which no responsive pleading is required. To the extent paragraph 16 is deemed an allegation of fact, denies the allegations of paragraph 16 of the FAC except admits that on August 1, 2007 Hearst Communications held warrants for 1,194,030 shares of Local.com stock, in addition to 302,087 outstanding common shares of Local.com.

17.    Admits the allegations of paragraph 17 of the FAC.

3

18.    Denies the allegations of paragraph 18 of the FAC, excepts admits that all such sales were on the open market, at higher prices than the reduced, pursuant to the Consent between Hearst Communications and Local.com, exercise price for shares underlying the Series A and Series B Warrants.

19.    Denies the allegations of paragraph 19 of the FAC, except admits that Exhibit A to the FAC represents sales of shares of common stock of Local.com by Hearst Communications.

20.    Denies the allegations of paragraph 20 of the FAC.

20.    Denies the allegations of paragraph 20 of the FAC.[1]

21.    Denies the allegations of paragraph 21 of the FAC.

22.    Hearst Communications denies any factual allegation contained in any paragraph of the FAC except as expressly admitted above.

23.    Hearst Communications denies that plaintiff is entitled to any of the relief sought in the prayer for relief on page 7 of the FAC.

## FIRST AFFIRMATIVE DEFENSE

24.    The FAC fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

25.    Plaintiff's claims are barred, in whole or in part, because plaintiff lacks standing.

## THIRD AFFIRMATIVE DEFENSE

26.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of waiver and estoppel.

---

[1] The FAC contains two paragraphs numbered "20." Hearst Communications denies the allegations of both of those paragraphs.

## FOURTH AFFIRMATIVE DEFENSE

27.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches and unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

28.    Plaintiff's claims must be dismissed, in whole or in part, because plaintiff failed to allege conditions precedent to her claims and failed to comply with conditions precedent to her claims.

## SIXTH AFFIRMATIVE DEFENSE

29.    The transactions by Hearst Communications alleged in the FAC are "unorthodox" or "borderline" transactions that are outside the ambit of Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. Section 78p(b) as they were not based on, nor is there any likelihood that they were based on, any inside information known to Hearst Communications, nor were the transactions the result of any influence or control by Hearst Communications over corporate decision making of Local.com, and the transactions did not pose any possibility of speculative abuse on the part of Hearst Communications.

## SEVENTH AFFIRMATIVE DEFENSE

30.    Plaintiff's monetary recovery, if any, must be reduced by the valuable benefits conferred by Hearst Communications on Local.com through transactions alleged in the FAC, and any costs to Hearst Communications incurred as a result of those transactions.

## CROSS-CLAIMS

Cross-claimant-plaintiff Hearst Communications, by its attorneys, Greenberg Traurig, LLP, as and for its cross-claims against cross-claim-defendant Local.com, alleges:

1.    Hearst Communications and Local.com entered into a Purchase Agreement dated February 22, 2007 and an Amendment No. 1 to Purchase Agreement dated March 29, 2007

5

(together, the "Agreement"), by which Hearst Communications purchased notes and warrants (the "Warrants") convertible to common stock of Local.com.

2.    In the Agreement, Local.com warranted that the issuance and sale of the Warrants pursuant to the Agreement "will not conflict with or result in a breach or violation of ... any statute, rule, regulation or order of any government agency or body or any court, domestic or foreign having jurisdiction over" Local.com.

3.    On July 9, 2007 Local.com's Form S-3 registration statement, registering for resale the shares of Local.com issued in connection with the Agreement, was made effective by the Securities & Exchange Commission (the "Effective Date").

4.    Pursuant to Section 7.9 of the Agreement, Local.com could not, without being in breach of contract with Hearst Communications, issue shares of its common stock or common stock equivalents for a period of 90 days after the Effective Date unless it received written permission from Hearst Communications.

5.    After sales it made on July 25, 2007, Hearst Communications owned 302,087 outstanding common shares of Local.com and owned warrants for an additional 1,194,030 common shares of Local.com.

6.    On or about July 25, 2007, without any prior knowledge, influence or request by Hearst Communications, Local.com approached Hearst Communications and requested that Hearst Communications waive certain of its contractual rights under Section 7.9 of the Agreement, and thereby allow Local.com to issue, without being in breach of contract with Hearst Communications, common stock and common stock equivalents during the time period described in Section 7.9 of the Agreement (the "Equity Transactions").

7.      Local.com unilaterally offered to Hearst Communications, as consideration for Hearst Communications agreement to waive certain of its contractual rights under Section 7.9 of the Agreement, a reduction in the exercise price of the Warrants.

8.      In order to accommodate Local.com, and to provide it flexibility to pursue possible Equity Transactions that would benefit Local.com, and its shareholders, but without any knowledge of any specific Equity Transactions contemplated by Local.com, Hearst Communications acquiesced in Local.com's request to waive certain of its rights under Section 7.9 of the Agreement and accepted Local.com's offer to compensate Hearst Communications for this waiver through the reduction of the exercise price of the Warrants.

9.      On July 31, 2007, Hearst Communications and Local.com entered into a Consent for Equity Sales (the "Consent"). (See Exhibit B).

10.      Pursuant to the Consent, Hearst Communications and Local.com agreed that: "Provided that [Local.com] files a Form 8-K disclosing the terms of this Consent no later than 5:00 p.m., New York time, on August 1, 2007, the Undersigned hereby waives (i) the application of Section 7.9 of the Agreement to the extent that such section would prohibit the Company from engaging in any Equity Transactions during the 90 day period following the Effective Date and (ii) its Right of First Refusal pursuant to Section 7.12 of the Agreement only with respect to any Equity Transaction that occurs during the 90 day period following the Effective Date."

11.      Local.com agreed in the Consent to reduce the exercise price of the Warrants.

12.      In the Consent, Local.com stated and agreed that Hearst Communications "has no knowledge of any specific transaction or financing plans that [Local.com] may be contemplating."

7

13.    In the Consent, Local.com stated and agreed that "[e]xcept as modified or amended pursuant to this Consent, the Agreement and the Warrants shall remain in full force and effect."

14.    On information and belief, after Local.com issued 2,356,900 shares of its common stock to institutional investors pursuant to a stock purchase agreement dated July 31, 2007, Local.com had 14,146,556 shares outstanding. (*See* Exhibit A).

15.    On information and belief, on August 1, 2007, sometime after Local.com issued 2,356,900 shares of its common stock to institutional investors, Local.com filed a Form 8-K disclosing the Consent. (*See* Exhibit C).

16.    Deborah Donoghue ("Plaintiff") has filed and served the FAC, alleging, *inter alia*, that Local.com's reduction of the exercise price of the Warrants pursuant to the Consent constituted a "deemed purchase" of the Warrants by Hearst Communications on August 1, 2007, and that coupled with Hearst Communications' sales of common stock of Local.com between July 10 and July 25, 2007, this "deemed purchase" constituted a violation of Section 16(b) of the Securities Exchange Act, as amended, 15 U.S.C. Section 78p(b) (the "Act") by Hearst Communications.

17.    The FAC alleges that, based on the alleged violation of the Act by Hearst Communications, Hearst Communications "realized profits" in an amount "estimated to exceed $3,750,000," and that Plaintiff is entitled to recover these "profits" on behalf of Local.com.

### FIRST CROSS-CLAIM
### (Breach of Contract)

18.    Hearst Communications repeats and realleges Paragraphs 1-17 of its cross-claims as if fully set forth herein.

8

19.    On August 1, 2007, Local.com committed a material breach of the Consent by issuing 2,356,900 shares of its common stock to institutional investors before it filed a Form 8-K with the Securities & Exchange Commission disclosing the terms of the Consent.

20.    As a result of cross-claim defendant Local.com's breach of contract, Hearst Communications has sustained damages in an amount to be determined at trial.

## SECOND CROSS-CLAIM
### (Breach of Warranty)

21.    Hearst Communications repeats and realleges Paragraphs 1 - 17 of its cross-claims as if fully set forth herein.

22.    Insofar as Local.com's reduction of the exercise price of the Warrants pursuant to the Consent constituted a violation of the Act or caused a violation of the Act, Local.com is in material breach of its warranty in the Agreement that the issuance or sale of the Warrants "will not conflict with or result in a breach or violation of ... any statute, rule, regulation or order of any government agency or body or any court, domestic or foreign having jurisdiction over" Local.com.

23.    As a result of cross-claim defendant Local.com's breach of warranty, Local.com has sustained damages in an amount to be determined at trial.

## THIRD CROSS-CLAIM
### (Unjust Enrichment)

24.    Hearst Communications repeats and realleges Paragraphs 1 - 17 of its cross-claims as if fully set forth herein.

25.    The reduction in the exercise price of the Warrants pursuant to the Consent occurred at the suggestion of Local.com, as compensation for Hearst Communications providing Local.com valuable consideration in the form of a waiver by Hearst Communications of certain rights it held under the Agreement.

9

26.     The waiver by Hearst Communications allowed Local.com to issue common stock and stock equivalents that provided considerable material benefits to Local.com in a market in which the price of Local.com's stock was declining on a daily basis.

27.     The benefit Local.com received by Hearst Communications granting the waiver pursuant to the Consent exceeded any cost to Local.com in reducing the exercise price of the Warrants.

28.     If Local.com were to recover any money from Hearst Communications as a result of the claims in the FAC, Local.com would be unjustly enriched at the expense of Hearst Communications by any such amount, and be unjustly enriched by retaining the benefit of the waiver provided by Hearst Communications pursuant to the Consent.

29.     The circumstances are such that equity and good conscience require Local.com to make full restitution to Hearst Communications of any amounts it receives as a result of this action, and any benefit it received and retains as a result of the waiver provided by Hearst Communications pursuant to the Consent.

## PRAYER FOR RELIEF

WHEREFORE, Hearst Communications demands judgment against Plaintiff and Cross-Claim-Defendant as follows:

1) Dismissing the FAC with prejudice and without costs;

2) Awarding Hearst Communications damages in an amount to be determined at trial;

3) Requiring Local.com to disgorge any amounts it receives as a result of this action to Hearst Communications, together with all benefits it received as a result of the waiver provided by Hearst Communications pursuant to the Consent;

10

4) Awarding Hearst Communications its attorneys' fees, costs and disbursements in connection with this action; and

5) Granting Hearst Communications such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      January 4, 2008

GREENBERG TRAURIG, LLP

By: /s/ Alan Mansfield
     Alan Mansfield
     William A. Wargo
200 Park Avenue, 39th Floor
New York, New York 10166
Phone: (212) 801-9200
Fax: (212) 801-6400
mansfielda@gtlaw.com
wargow@gtlaw.com

*Attorneys for Defendant/Cross-claimant-Plaintiff
Hearst Communications, Inc.*

11

A
TO ANSWER

Local.Com Corporation

Table of Contents

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-Q

☑  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended June 30, 2007

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission File Number: 000-50989

# LOCAL.COM CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 33-0849123 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

One Technology Drive, Building G
Irvine, CA 92618
(Address of principal executive offices)(Zip Code)

(949) 784-0800
(Registrant's telephone number, including area code)

Not Applicable
(Former name, former address and former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☐     Accelerated filer ☐     Non-accelerated filer ☑

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

Number of shares outstanding at August 1, 2007:

| | | |
|---|---|---|
| | Common: | 14,146,556 |
| | Preferred: | 0 |

Local.Com Corporation

**LOCAL.COM CORPORATION**
**TABLE OF CONTENTS**

PART I — FINANCIAL INFORMATION                                                                    Page

Item 1.    Financial Statements
           Condensed Balance Sheets as of June 30, 2007 (Unaudited) and December 31, 2006           3
           Condensed Statements of Operations for the three and six months ended June 30, 2007 and 2006
           (Unaudited)                                                                              4
           Condensed Statements of Comprehensive Income (Loss) for the three and six months ended June 30,
           2007 and 2006 (Unaudited)                                                                5
           Condensed Statements of Cash Flows for the six months ended June 30, 2007 and 2006 (Unaudited)   6
           Notes to Condensed Financial Statements (Unaudited)                                      7

Item 2.    Management's Discussion and Analysis of Financial Condition and Results of Operations    16

Item 3.    Quantitative and Qualitative Disclosures About Market Risk                               23

Item 4T.   Controls and Procedures                                                                 23

           PART II — OTHER INFORMATION

Item 1.    Legal Proceedings                                                                        24

Item 1A.   Risk Factors                                                                             24

Item 2.    Unregistered Sales of Equity Securities and Use of Proceeds                              24

Item 3.    Defaults Upon Senior Securities                                                          24

Item 4.    Submission of Matters to a Vote of Security Holders                                      24

Item 5.    Other Information                                                                        24

Item 6.    Exhibits                                                                                 24
EXHIBIT 31.1
EXHIBIT 31.2
EXHIBIT 32.1

2

Local.Com Corporation

Page 4 of 31

Table of Contents

PART I — FINANCIAL INFORMATION

Item 1. Financial Statements.

## LOCAL.COM CORPORATION
### CONDENSED BALANCE SHEETS
(in thousands, except share data)

| | June 30, 2007 | December 31, 2006 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 6,720 | $ 2,281 |
| Restricted cash | 29 | 41 |
| Marketable securities | 1,984 | 1,972 |
| Accounts receivable, net of allowances of $10 and $9, respectively | 3,133 | 2,091 |
| Prepaid financing costs | 880 | — |
| Prepaid expenses and other current assets | 177 | 302 |
| | | |
| Total current assets | 12,923 | 6,670 |
| | | |
| Property and equipment, net | 1,799 | 2,028 |
| Intangible assets, net | 2,764 | 2,815 |
| Goodwill | 12,213 | 12,213 |
| Long-term restricted cash | 96 | 123 |
| Deposits | 33 | 42 |
| | | |
| Total assets | $ 29,830 | $ 24,691 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $ 3,786 | $ 2,851 |
| Accrued compensation | 388 | 325 |
| Deferred rent | 370 | 432 |
| Other accrued liabilities | 420 | 374 |
| Notes payable | — | 63 |
| Deferred revenue | 217 | 248 |
| | | |
| Total current liabilities | 5,181 | 4,293 |
| | | |
| Long-term unsecured convertible notes, net of debt discount of $5,689 | 2,311 | — |
| | | |
| Total liabilities | 7,492 | 4,293 |
| | | |
| Commitments and contingencies | | |
| | | |
| Stockholders' equity: | | |
| Convertible preferred stock, $0.0001 par value; 10,000,000 shares authorized; none issued and outstanding for all periods presented | — | — |
| Common stock, $0.00001 par value; 30,000,000 shares authorized; 9,408,884 and 9,297,502 issued and outstanding, respectively | — | — |
| Additional paid-in capital | 59,623 | 51,657 |
| Accumulated comprehensive loss | (16) | (27) |
| Accumulated deficit | (37,269) | (31,032) |

· Local.Com Corporation

| | | |
|---|---|---|
| Stockholders' equity | 22,342 | 20,598 |
| Total liabilities and stockholders' equity | $ 29,891 | $ 24,391 |

See accompanying notes to the condensed financial statements.

3

Local.Com Corporation

Table of Contents

**LOCAL.COM CORPORATION**
**CONDENSED STATEMENTS OF OPERATIONS**
(in thousands, except shares and per share amounts)
(Unaudited)

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Revenues | $ 5,098 | $ 3,574 | $ 9,979 | $ 6,525 |
| Operating expenses: | | | | |
| Search serving | 961 | 1,951 | 1,876 | 2,961 |
| Sales and marketing | 4,701 | 3,146 | 9,400 | 5,614 |
| General and administrative | 1,178 | 1,249 | 2,510 | 3,352 |
| Research and development | 551 | 618 | 1,251 | 1,569 |
| Amortization of intangibles | 244 | 227 | 481 | 473 |
| Total operating expenses | 7,635 | 6,931 | 15,409 | 13,969 |
| Operating loss | (2,537) | (3,357) | (5,430) | (7,444) |
| Interest and other income (expense), net | (614) | 83 | (806) | 188 |
| Loss before income taxes | (3,151) | (3,274) | (6,236) | (7,256) |
| Provision for income taxes | — | 1 | 1 | 2 |
| Net loss | $ (3,151) | $ (3,275) | $ (6,237) | $ (7,258) |
| Per share data: | | | | |
| Basic net loss per share | $ (0.34) | $ (0.38) | $ (0.67) | $ (0.79) |
| Diluted net loss per share | $ (0.34) | $ (0.38) | $ (0.67) | $ (0.79) |
| Basic weighted average shares outstanding | 9,325,817 | 9,233,601 | 9,312,125 | 9,222,385 |
| Diluted weighted average shares outstanding | 9,325,817 | 9,233,601 | 9,312,125 | 9,222,385 |

See accompanying notes to the condensed financial statements.

4

Local.Com Corporation

Table of Contents

### LOCAL.COM CORPORATION
### CONDENSED STATEMENTS OF COMPREHENSIVE INCOME (LOSS)
(in thousands)
(Unaudited)

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Net loss | $(3,151) | $(3,475) | $(6,237) | $(7,258) |

Other comprehensive income (loss):

| | | | | |
|---|---|---|---|---|
| Foreign currency translation adjustments | | 16 | | 13 |
| Net unrealized gain (loss) on marketable securities | 5 | 18 | 11 | 40 |
| Total comprehensive loss | $(3,146) | $(3,441) | $(6,226) | $(7,205) |

Supplemental comprehensive income (loss) information:

| | | | | |
|---|---|---|---|---|
| Unrealized holding gains (losses) arising during period | $5 | $23 | $11 | $61 |
| Reclassification adjustment for losses included in net loss | — | (5) | — | (21) |
| Net unrealized gain (loss) on marketable securities | $5 | $18 | $11 | $40 |

See accompanying notes to the condensed financial statements.

5

'Local.Com Corporation

Table of Contents

## LOCAL.COM CORPORATION
### CONDENSED STATEMENTS OF CASH FLOWS
(in thousands)
(Unaudited)

| | Six months ended June 30, | |
|---|---|---|
| | 2007 | 2006 |
| Cash flows from operating activities: | | |
| Net loss | $(6,237) | $(7,258) |
| Adjustments to reconcile net loss to cash used in operating activities: | | |
| Depreciation and amortization | 1,025 | 1,043 |
| Provision for doubtful accounts | (9) | (15) |
| Non-cash stock based compensation | 836 | 1,581 |
| Non-cash interest income | — | (5) |
| Non-cash interest expense | 612 | — |
| Realized loss on marketable securities | — | 21 |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | (1,051) | (704) |
| Prepaid expenses and other | (369) | 46 |
| Accounts payable and accrued liabilities | 979 | (5) |
| Deferred revenue | (28) | 24 |
| Net cash used in operating activities | (4,224) | (5,270) |
| | | |
| Cash flows from investing activities: | | |
| Capital expenditures | (315) | (163) |
| Proceeds from sales of marketable securities | — | 5,378 |
| Increase in restricted cash | 41 | (10) |
| Acquisition, net of cash returned | — | 232 |
| Net cash (used in) provided by investing activities | (274) | 5,447 |
| | | |
| Cash flows from financing activities: | | |
| Proceeds from issuance of senior secured convertible notes | 8,000 | — |
| Proceeds from issuance of common stock from exercise of options | 14 | 174 |
| Proceeds from issuance of common stock from exercise of warrants | — | 68 |
| Proceeds from swing-sale profits | 5 | — |
| Payment of notes payable | (63) | (50) |
| Payment of financing related costs | (3) | (3) |
| Net cash provided by financing activities | 7,960 | 189 |
| | | |
| Effect of currency changes on cash | — | 11 |
| | | |
| Net increase in cash and cash equivalents | 3,462 | 327 |
| Cash and cash equivalents, beginning of period | 3,264 | 1,075 |
| Cash and cash equivalents, end of period | $6,726 | $1,402 |
| | | |
| Supplemental cash flow information: | | |
| Interest paid | $124 | $2 |
| Income taxes paid | $ 1 | $ 2 |
| | | |
| Non-cash investing and financing transactions: | | |
| Debt discount related to issuance of senior secured convertible notes | $ 6,221 | — |
| Warrants issued for financing costs | $ 1,458 | — |

· Local.Com Corporation

Common stock issued for asset purchase

$   431

See accompanying notes to the condensed financial statements.

6

· Local.Com Corporation

Table of Contents

## LOCAL.COM CORPORATION
### NOTES TO CONDENSED FINANCIAL STATEMENTS
(Unaudited)

**1. Basis of presentation**

The unaudited interim condensed financial statements as of June 30, 2007 and for the three and six months ended June 30, 2007 and 2006, included herein, have been prepared by the Company, without audit, pursuant to rules and regulations of the Securities and Exchange Commission, and, in the opinion of management, reflect all adjustments (consisting of only normal recurring adjustments), which are necessary for a fair presentation. The results of operations for the three and six months ended June 30, 2007 are not necessarily indicative of the results for the full year. The accompanying condensed financial statements should be read in conjunction with the consolidated financial statements and notes thereto for the year ended December 31, 2006 included in the Company's Form 10-K filed with the Securities and Exchange Commission.

Certain reclassifications have been made to the prior period's consolidated financial statements to conform to current year's presentation. Accrued royalties of $19,000 as of December 31, 2006, is included in other accrued liabilities.

**2. Significant accounting policies**

*Principles of consolidation*

Prior to January 1, 2007, the Company's consolidated financial statements included the accounts of Local.com Corporation, its wholly owned subsidiaries, Interchange Europe Holding Corporation, Interchange Internet Search GmbH, Inspire Infrastructure 2i AB, and Inspire Infrastructure (UK) Limited, along with its majority owned subsidiary Inspire Infrastructure Espana SL. All intercompany balances and transactions were eliminated. Subsequent to January 1, 2007, the Company's financial statements include only the accounts of Local.com Corporation as all of the Company's subsidiaries have been dissolved.

*Intangible assets*

Developed technology arising from acquisitions is recorded at cost and amortized on a straight-line basis over five years. Accumulated amortization at June 30, 2007 was $1,042,067.

Non-compete agreements arising from acquisitions are recorded at cost and amortized on a straight-line basis over three years. Accumulated amortization at June 30, 2007 was $201,900.

Purchased technology arising from acquisitions is recorded at cost and amortized on a straight-line basis over three years. Accumulated amortization at June 30, 2007 was $850,255.

Patents are recorded at cost and amortized on a straight-line basis over three years. Accumulated amortization at June 30, 2007 was $7,000.

*Goodwill*

Goodwill representing the excess of the purchase price over the fair value of the net tangible and intangible assets arising from acquisitions and purchased domain name are recorded at cost. Intangible assets, such as goodwill and domain name, which are determined to have an indefinite life, are not amortized in accordance with Statement of Financial Account Standards (SFAS) No. 142, *Goodwill and Other Intangible Assets*. The Company performs annual impairment reviews during the fourth fiscal quarter of each year, or earlier, if indicators of potential impairment exist. The Company performed its annual impairment analysis as of December 31, 2006 and determined that no impairment existed. Future impairment reviews may result in charges against earnings to write-down the value of non-amortized assets.

7

Local.Com Corporation

Table of Contents

*Web site development costs and computer software developed for internal use*

Statement of Position 98-1, *Accounting for the Costs of Computer Software Developed or Obtained for Internal Use* (SOP 98-1), requires that costs incurred in the preliminary project and post-implementation stages of an internal use software project be expensed as incurred and that certain costs incurred in the application development stage of a project be capitalized. Emerging Issues Task Force Issue No. 00-02 *Accounting for Web Site Development Costs* (EITF 00-02), requires that costs incurred in the preliminary project and operating stage of web site development be expensed as incurred and that certain costs incurred in the development stage of web site development be capitalized and amortized over its useful life. During the three and six months ended June 30, 2007, the Company capitalized an additional $154,000 and $221,000, respectively, related to the web site development with a useful life of three years. Amortization of capitalized web site costs was $42,000 and $85,000 for the three and six months ended June 30, 2007, respectively. Capitalized web site costs are included in property and equipment, net.

*Stock-based compensation*

The Company adopted SFAS No. 123R, *Share-Based Payment* on January 1, 2006, the beginning of its first quarter of fiscal 2006, using the modified-prospective transition method. Under the modified-prospective transition method, prior periods of the Company's financial statements were not restated for comparison purposes. In addition, the measurement, recognition and attribution provisions of SFAS No. 123R apply to new grants and grants outstanding on the adoption date. Estimated compensation expense for outstanding grants at the adoption date is being recognized over the remaining vesting period using the compensation expense calculated for the pro forma disclosure purposes under SFAS No. 123, *Accounting for Stock-Based Compensation*.

Total stock-based compensation expense recognized for the three and six months ended June 30, 2007 and 2006 is as follows (in thousands, except per share amount):

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Sales and marketing | $ 90 | $ 199 | $ 213 | $ 370 |
| General and administrative | 200 | 391 | 492 | 1,062 |
| Research and development | 56 | 76 | 132 | 149 |
| Total stock-based compensation expense | $ 346 | $ 666 | $ 837 | $ 1,581 |
| Basic and diluted net compensation expense per share | $ 0.04 | $ 0.08 | $ 0.09 | $ 0.17 |

The fair values of these options were estimated at the date of grant using a Black-Scholes option pricing model with the following weighted-average assumptions:

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Risk-free interest rate | 4.70% | 4.95% | 4.78% | 4.71% |
| Expected lives (in years) | 7.0 | 6.1 | 7.0 | 6.0 |
| Expected dividend yield | None | None | None | None |
| Expected volatility | 100.00% | 122.94% | 100.00% | 124.48% |

*Net income (loss) per share*

SFAS No. 128, *Earnings per Share*, establishes standards for computing and presenting earnings per share. Basic net loss per share is calculated using the weighted average shares of common stock outstanding during the periods. Diluted net loss per share is calculated using the weighted average number of common and potentially dilutive common shares outstanding during the period, using the as-if converted method for senior secured convertible notes, and the treasury stock method for options and warrants.

For the three and six months ended June 30, 2007, potentially dilutive securities, which consist of options to purchase 1,944,495 shares of common stock at prices ranging from $0.40 to $16.59 per share, warrants to purchase 2,774,013 shares of common stock at prices ranging from $3.00 to $25.53 per share and senior secured convertible notes that could convert into 1,990,050 shares of common stock were not included in the computation of diluted net income per share because such inclusion would be antidilutive.

Local.Com Corporation

8

Local.Com Corporation

Table of Contents

For the three and six months ended June 30, 2006, potentially dilutive securities, which consist of options to purchase 1,571,814 shares of common stock at prices ranging from $0.40 to $16.59 per share and warrants to purchase 1,199,414 shares of common stock at prices ranging from $3.00 to $25.53 per share were not included in the computation of diluted net income per share because such inclusion would be antidilutive.

The following table sets forth the computation of basic and diluted net loss per share for the periods indicated (in thousands, except per share amounts):

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| **Numerator:** | | | | |
| Net loss | $(3,151) | $(3,475) | $(6,238) | $(7,258) |
| **Denominator:** | | | | |
| Denominator for basic calculation weighted average shares | 9,326 | 9,234 | 9,312 | 9,222 |
| **Dilutive common stock equivalents:** | | | | |
| Senior secured convertible notes | — | — | — | — |
| **Options** | | | | |
| Warrants | — | — | — | — |
| **Denominator for diluted calculation weighted average shares:** | 9,326 | 9,234 | 9,312 | 9,222 |
| Net loss per share: | | | | |
| **Basic net loss per share:** | $ (0.34) | $ (0.38) | $ (0.67) | $ (0.79) |
| Diluted net loss per share | $ (0.34) | $ (0.38) | $ (0.67) | $ (0.79) |

*New accounting pronouncements*

In February 2007, the Financial Accounting Standard Board (FASB) issued SFAS No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities* (SFAS No. 159), which creates an alternative measurement method for certain financial assets and liabilities. SFAS No. 159 permits fair value to be used for both the initial and subsequent measurements on a contract-by-contract election, with changes in fair value to be recognized in earnings as those changes occur. This election is referred to as the "fair value option." SFAS No. 159 also requires additional disclosures to compensate for the lack of comparability that will arise from the use of the fair value option. SFAS No. 159 is effective for fiscal years beginning after November 15, 2007, with early adoption permitted as of the beginning of a company's fiscal year, provided the company has not yet issued financial statements for that fiscal year. The Company is currently evaluating the impact the adoption of SFAS No. 159 will have on its financial position and results of operations.

9

· Local.Com Corporation

Table of Contents

3. Composition of certain balance sheet and statement of operations captions

Property and equipment consisted of the following (in thousands):

| | June 30, 2007 | December 31, 2006 |
|---|---|---|
| Furniture and fixtures | $ 202 | $ 201 |
| Office equipment | 119 | 91 |
| Computer equipment | 1,778 | 1,750 |
| Computer software | 1,732 | 1,473 |
| Leasehold improvements | 583 | 583 |
| | 4,414 | 4,098 |
| Less accumulated depreciation and amortization | (2,615) | (2,070) |
| Property and equipment, net | $ 1,799 | $ 2,028 |

Intangible assets consisted of the following (in thousands):

| | June 30, 2007 | December 31, 2006 |
|---|---|---|
| Developed technology | $ 2,223 | $ 2,222 |
| Non-compete agreements | 261 | 261 |
| Purchased technology | 1,249 | 1,242 |
| Patents | 431 | — |
| Domain name | 701 | 701 |
| | 4,865 | 4,434 |
| Less accumulated amortization | (2,101) | (1,621) |
| Intangible assets, net | $ 2,764 | $ 2,813 |

Interest and other income (expense), net consisted of the following (in thousands):

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Interest income | $ 95 | $ 89 | $ 167 | $ 179 |
| Interest expense | (258) | (1) | (361) | (3) |
| Interest expense – non-cash | (451) | — | (612) | — |
| Gain on sale of fixed assets | — | — | — | 15 |
| Realized loss on sale of marketable securities | — | (5) | — | (3) |
| Interest and other income (expense), net | $ (614) | $ 83 | $ (806) | $ 188 |

10

Local.Com Corporation

Table of Contents

## 4. Operating segment information

SFAS No. 131, *Disclosures about Segments of an Enterprise and Related Information* (SFAS No. 131), requires that public business enterprises report certain information about operating segments. The Company has one reporting segment: paid-search. The following table presents summary operating geographic information as required by SFAS No. 131 (in thousands):

|  | Three months ended June 30, | | Six months ended June 30, | |
| --- | --- | --- | --- | --- |
|  | 2007 | 2006 | 2007 | 2006 |
| Revenue by geographic region: | | | | |
| United States | $ 4,980 | $ 3,300 | $ 9,854 | $ 6,392 |
| Europe | 118 | 74 | 125 | 133 |
| Total revenue | $ 5,098 | $ 3,374 | $ 9,979 | $ 6,525 |

## 5. Stock option plans

### 1999 Plan

In March 1999, the Company adopted the 1999 Equity Incentive Plan (1999 Plan). The 1999 Plan provides for the grant of non-qualified and incentive stock options to employees, directors and consultants of options to purchase shares of the Company's stock. Options are granted at exercise prices equal to the fair market value of the common stock on the date of grant. Prior to 2006, 25% of the options were available for exercise at the end of nine months, while the remainder of the grant were exercisable ratably over the next 27 month period, provided the optionee remained in service to the Company. For options granted after January 1, 2006, 33.33% of the options are available for exercise at the end of one year, while the remainder of the grant is exercisable ratably over the next 8 quarters, provided the optionee remains in service to the Company. The options generally expire ten years from the date of grant. The Company has reserved 500,000 shares for issuance under the 1999 Plan, of which 208,680 were outstanding and 23 were available for future grant at June 30, 2007.

### 2000 Plan

In March 2000, the Company adopted the 2000 Equity Incentive Plan (2000 Plan). The 2000 Plan provides for the grant of non-qualified and incentive stock options to employees, directors and consultants of options to purchase shares of the Company's stock. Options are granted at exercise prices equal to the fair market value of the common stock on the date of grant. Prior to 2006, 25% of the options were available for exercise at the end of nine months, while the remainder of the grant were exercisable ratably over the next 27 month period, provided the optionee remained in service to the Company. For options granted after January 1, 2006, 33.33% of the options are available for exercise at the end of one year, while the remainder of the grant is exercisable ratably over the next 8 quarters, provided the optionee remains in service to the Company. The options generally expire ten years from the date of grant. The Company has reserved 500,000 shares for issuance under the 2000 Plan, of which 362,181 were outstanding and 3,042 were available for future grant at June 30, 2007.

### 2004 Plan

In January 2004, the Company adopted the 2004 Equity Incentive Plan (2004 Plan), in August 2004, the Company amended the 2004 Plan and in September 2004, the stockholders of the Company approved the 2004 Plan, as amended. The 2004 Plan provides for the grant of non-qualified and incentive stock options to employees, directors and consultants of options to purchase shares of the Company's stock. Options are granted at exercise prices equal to the fair market value of the common stock on the date of grant. Prior to 2006, 25% of the options were available for exercise at the end of nine months, while the remainder of the grant were exercisable ratably over the next 27 month period, provided the optionee remained in service to the Company. For options granted after January 1, 2006, 33.33% of the options are available for exercise at the end of one year, while the remainder of the grant is exercisable ratably over the next 8 quarters, provided the optionee remains in service to the Company. The options generally expire ten years from the date of grant. The Company has reserved 600,000 shares for issuance under the 2004 Plan, of which 477,851 were outstanding and 11,166 were available for future grant at June 30, 2007.

11

Local.Com Corporation

Table of Contents

*2005 Plan*

In August 2005, the Company adopted and the stockholders of the Company approved the 2005 Equity Incentive Plan (2005 Plan). The 2005 Plan provides for the grant of non-qualified and incentive stock options to employees, directors and consultants of options to purchase shares of the Company's stock. Options are granted at exercise prices equal to the fair market value of the common stock on the date of grant. Prior to 2006, 25% of the options were available for exercise at the end of nine months, while the remainder of the grant were exercisable ratably over the next 27 month period, provided the optionee remained in service to the Company. For options granted after January 1, 2006, 33.33% of the options are available for exercise at the end of one year, while the remainder of the grant is exercisable ratably over the next 8 quarters, provided the optionee remains in service to the Company. The options generally expire ten years from the date of grant. The Company has reserved 1,000,000 shares for issuance under the 2005 Plan, of which 895,783 were outstanding and 64,719 were available for future grant at June 30, 2007.

Stock option activity under the plans during the six months ended June 30, 2007 is as follows:

| | Shares | Weighted Average Exercise Price | Aggregate Intrinsic Value (In thousands) |
|---|---|---|---|
| Outstanding at December 31, 2007 | 1,927,761 | $ 5.10 | |
| Granted | 140,000 | 4.18 | |
| Exercised | (99,221) | 1.55 | |
| Cancelled | (123,647) | 5.35 | |
| Outstanding at June 30, 2007 | 1,944,893 | $ 5.02 | $ 9,762 |
| Exercisable at June 30, 2007 | 1,179,168 | $ 5.34 | $ 6,291 |

The weighted-average fair value at grant date for the options granted during the six months ended June 30, 2007 and 2006 was $3.52 and $3.85 per option, respectively.

The aggregate intrinsic value of all options exercised during the six month ended June 30, 2007 and 2006 was $10,000 and $61,000, respectively.

12

Local.Com Corporation

Table of Contents

Stock option summary information for the plans at June 30, 2007 is as follows:

| | Options Outstanding | | | Options Exercisable | |
| Range of Exercise Prices | Shares | Weighted Average Remaining Contractual Life | Weighted Average Exercise Price | Shares | Weighted Average Exercise Price |
|---|---|---|---|---|---|
| $0.00 - $1.00 | 23,575 | 0.5 | $ 0.70 | 23,662 | $ 0.40 |
| $1.01 - $2.00 | 175,000 | 2.3 | $ 2.00 | 175,000 | $ 2.00 |
| $2.01 - $3.00 | 142,828 | 5.1 | $ 2.73 | 149,509 | $ 2.52 |
| $3.01 - $4.00 | 803,940 | 7.6 | $ 3.70 | 332,107 | $ 3.84 |
| $4.01 - $5.00 | 306,900 | 5.6 | $ 4.20 | 215,580 | $ 4.24 |
| $5.01 - $6.00 | 139,777 | 7.2 | $ 5.67 | 104,149 | $ 5.71 |
| $6.01 - $7.00 | 111,061 | 5.3 | $ 6.64 | 85,985 | $ 6.64 |
| $7.01 - $8.00 | 185,500 | 8.1 | $ 7.52 | 112,886 | $ 7.54 |
| $8.01 - $10.00 | 70,000 | 7.0 | $ 9.97 | 66,266 | $ 9.19 |
| $10.01 - $16.59 | 117,080 | 7.0 | $ 15.58 | 102,656 | $ 15.57 |
| | 1,944,498 | 5.9 | $ 5.02 | 1,117,168 | $ 5.34 |

## 6. Warrants

Warrant activity during the six months ended June 30, 2007 is as follows:

| | Shares | Weight Average Exercise Price |
|---|---|---|
| Outstanding at December 31, 2006 | 1,041,869 | $ 9.14 |
| Issued | 1,735,324 | 5.23 |
| Exercised | (650) | 3.86 |
| Expired | (3,125) | 4.00 |
| Outstanding at June 30, 2007 | 2,774,018 | 6.69 |

| Exercisable at June 30, 2007 | 1,181,973 | $ 8.66 |
|---|---|---|

Warrant summary information at June 30, 2007 is as follows:

| | Warrants Outstanding | | | Warrants Exercisable | |
| Range of Exercise Prices | Shares | Weighted Average Remaining Contractual Life | Weighted Average Exercise Price | Shares | Weighted Average Exercise Price |
|---|---|---|---|---|---|
| $2.00 - $3.99 | 400,950 | 1.2 | $ 3.59 | 400,950 | $ 3.59 |
| $4.00 - $4.99 | 1,010,251 | 4.1 | $ 4.70 | 214,231 | $ 4.27 |
| $5.00 - $7.99 | 867,602 | 4.7 | $ 5.03 | 71,642 | $ 5.03 |
| $8.00 - $9.99 | 15,000 | 0.3 | $ 8.00 | 15,000 | $ 8.00 |
| $10.00 - $19.99 | 315,750 | 2.3 | $ 10.00 | 315,750 | $ 10.00 |
| $20.00 - $25.53 | 164,400 | 2.5 | $ 25.53 | 164,400 | $ 25.53 |
| | 2,774,018 | 3.5 | $ 6.69 | 1,181,973 | $ 8.66 |

13

Local.Com Corporation

Table of Contents

### 7. Atlocal asset purchase

On June 9, 2005, the Company entered into an asset purchase agreement with Xiongwu Xia, an individual, to purchase the patent-pending Atlocal Search Engine Computer software, the Atlocal.com domain name, a computer server, and the Atlocal.com database for $500,000 in cash, cash acquisition costs of $3,238 and 104,311 unregistered shares of Local.com common stock valued at $750,000 based upon a 90-day moving average. In addition, the Company will issue Mr. Xia an additional 104,311 shares of unregistered Local.com common stock if the patent is issued for the Atlocal Search Engine Computer software before June 9, 2010.

On June 12, 2007, the Company was issued patent number 7,231,405, *Methods and Apparatus of Indexing Web Pages of a Web Site for Geographical Searchine Based on User Location*. The Company issued Mr. Xia the additional 104,311 shares of unregistered Local.com common stock valued at $431,000 based upon the closing price of the Company's common stock of $4.13 and recorded the amount as an intangible asset and will amortize the value over three years.

### 8. Subsequent events

*PremierGuide acquisition*

On July 18, 2007, the Company completed the acquisition, through a wholly owned subsidiary, of all of the outstanding capital stock of PremierGuide, Inc., a Delaware Corporation and provider of online business directories for an aggregate purchase price of $2.0 million in cash. The allocation of the purchase price to assets acquired and liabilities assumed is still being determined.

*Senior secured convertible notes*

On February 22, 2007, the Company issued $8.0 million of senior secured convertible notes ("Notes") to two investors (the "Investors") for gross proceeds of $8.0 million. The Notes bore interest at a rate of 9% per annum for a term of two years and were convertible into 1,990,050 shares of the Company's common stock at a conversion price of $4.02 per share. In connection with the sale of the Notes, the Company also issued to the Investors warrants to purchase up to 796,020 shares of the Company's common stock at an exercise price of $4.82 ("Series A Warrants") and warrants to purchase up to 796,020 shares of the Company's common stock at an exercise price of $5.63 ("Series B. Warrants").

During July 2007, the Investors converted all of the $8.0 million in aggregate principal amount of the Notes into an aggregate of 1,990,050 shares of the Company's common stock.

On July 31, 2007, the Company entered into a Consent to Equity Sales agreements with the Investors whereby the Investors waived the application of Section 7.9 of the Convertible Note Agreement which prohibits the Company from selling securities under certain circumstances and the Strategic Investor waived their Right of First Refusal pursuant to Section 7.12 of the Convertible Note Agreement with respect to any equity transaction that occurs during the 90 day period following July 9, 2007. In addition, the Company agreed to amend the warrants issued to the Investors so that the exercise price of the Series A Warrant is decreased to $4.32 per share and the exercise price per share of the Series B Warrant is decreased to $5.13 per share.

*Warrant exercises*

During July 2007, holders of the Company's warrants exercised 333,981 of outstanding warrants for net proceeds to the Company of $1.3 million.

*Private placement*

On August 1, 2007, the Company issued 2,356,900 shares of its common stock, par value $0.00001 per share, for an aggregate purchase price of $12,962,950 to institutional investors in a private placement transaction pursuant to a Securities Purchase Agreement, dated as of July 31, 2007 (the "Securities Purchase Agreement"). In connection with the sale of the common stock, the Company also issued the investors warrants to purchase up to 471,380 shares of the Company's common stock at an exercise price of $7.89 per share exercisable beginning February 1, 2008 and for a period of five years thereafter; and warrants to purchase up to 471,380 shares of the Company's common stock at an

14

· Local.Com Corporation

Table of Contents

exercise price of $9.26 per share exercisable beginning February 1, 2008 and for a period of six years thereafter. In connection with the transaction described herein, the Company also entered into a Registration Rights Agreement which obligates the Company to register the resale of the shares of common stock sold in the private placement and the shares of common stock issuable upon exercise of the warrants under the Securities Act of 1933, as amended.

In connection with the transaction, GunnAllen Financial Inc. ("GunnAllen") acted as the Company's placement agent. For payment for these services, the Company will pay GunnAllen fees of $827,777 in cash, of which $250,000 will be paid to Norman K. Farra Jr., a director of the Company and an employee of GunnAllen. In addition, the Company will issue GunnAllen warrants to purchase up to 46,063 shares of the Company's common stock at $7.89 per share and warrants to purchase up to 46,063 shares of the Company's common stock at $9.26 per share. In addition, the Company will issue Norman K. Farra Jr. warrants to purchase 19,930 shares of the Company's common stock at $7.89 per share and warrants to purchase 19,930 shares of the Company's common stock at $9.26 per share.

15

· Local.Com Corporation

<u>Table of Contents</u>

## Item 2. Management's Discussion and Analysis of Financial Condition and Results of Operations.

*This Quarterly Report on Form 10-Q or certain information included or incorporated by reference in this report, contains or may contain forward-looking statements that involve risks, uncertainties and assumptions. All statements, other than statements of historical fact, are statements that could be deemed "forward-looking statements" within the meaning of the federal securities laws. In addition, important factors to consider in evaluating such forward-looking statements include changes or developments in social, economic, market, legal or regulatory circumstances, changes in our business or growth strategy or an inability to execute our strategy due to changes in our industry or the economy generally, the emergence of new or growing competitors, the actions or omissions of third parties, including customers, competitors and governmental authorities, and various other factors, including those described or referred to in Item 1A of this Quarterly Report. Should any one or more of these risks or uncertainties materialize, or the underlying estimates or assumptions prove incorrect, our actual results could differ materially from those expressed in the forward-looking statements and there can be no assurance that the forward-looking statements contained in this report will in fact occur.*

*The following discussion and analysis of our financial condition and results of operations should be read in conjunction with the attached condensed consolidated financial statements and related notes thereto, and with the audited consolidated financial statements and related notes thereto as of December 31, 2006 and for the year ended December 31, 2006 included in our Annual Report on Form 10-K filed with the Securities and Exchange Commission on March 16, 2007.*

### Overview

We provide paid-search advertising services to local and national businesses on the Internet. Our services enable businesses to list their products and services in our distributed Internet search results. By providing listings of products and services to consumers in a targeted search context, we offer businesses an effective method of advertising to consumers during the purchasing process.

Our sponsored listings are derived from our Advertiser Network, which includes our direct advertisers as well as indirect advertisers from other paid-search and directory companies. We supply these aggregated sponsored listings to our own Local.com web site and our Distribution Network, which is a network of web sites and search engines that integrate our search results into their web sites, in response to targeted keyword searches performed by Internet users on those web sites.

We generate revenue each time an Internet user initiates a search on our own Local.com web site or on our Distribution Network and clicks-through on a sponsored listing from our Advertiser Network. We generally compile these sponsored listings according to bid price, which is the amount an advertiser is willing to pay for each click-through. Advertisers pay only when an Internet user clicks-through on the advertiser's sponsored listing. Our distribution model is designed to provide sponsored listings from our direct advertisers as well as the advertisers of other paid-search engines to our broad Distribution Network. We also generate revenue from monthly fee arrangements and display advertising (banners).

### *Stock-based compensation*

We adopted Statement of Financial Accounting Standards (SFAS) No. 123R, *Share-Based Payment,* on January 1, 2006, the beginning of our first quarter of fiscal 2006, using the modified-prospective transition method. Under the modified-prospective transition method prior periods of our financial statements are not restated for comparison purposes. In addition, the measurement, recognition and attribution provisions of SFAS No. 123R apply to new grants and grants outstanding on the adoption date. Estimated compensation expense for outstanding grants at the adoption date are being recognized over the remaining vesting period using the compensation expense calculated for the pro forma disclosure purposes under SFAS No. 123, *Accounting for Stock-Based Compensation.*

16

Local.Com Corporation

Table of Contents

Total stock-based compensation expense recognized for the three and six months ended June 30, 2007 and 2006 is as follows (in thousands, except per share amount):

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Sales and marketing | $ 93 | $ 196 | $ 213 | $ 370 |
| General and administrative | 200 | 391 | 492 | 1,062 |
| Research and development | 53 | 79 | 132 | 149 |
| Total stock-based compensation expense | $ 346 | $ 666 | $ 837 | $ 1,581 |
| Basic and diluted net compensation expense per share | $ 0.04 | $ 0.09 | $ 0.09 | $ 0.21 |

### Recent Developments

*PremierGuide Acquisition*

On July 18, 2007, we completed the acquisition, through a wholly-owned subsidiary, of all of the outstanding capital stock of PremierGuide, Inc., a Delaware corporation and provider of online business directories for an aggregate purchase price of $2.0 million in cash. The allocation of the purchase price to assets acquired and liabilities assumed is still being determined.

*Senior secured convertible notes*

On February 22, 2007, we issued $8.0 million of senior secured convertible notes ("Notes") to two investors (the "Investors") for gross proceeds of $8.0 million. The Notes bore interest at a rate of 9% per annum for a term of two years and were convertible into 1,990,050 shares of our common stock at a conversion price of $4.02 per share. In connection with the sale of the Notes, we also issued to the Investors warrants to purchase up to 796,020 shares of our common stock at an exercise price of $4.82 ("Series A Warrants") and warrants to purchase up to 796,020 shares of our common stock at an exercise price of $5.63 ("Series B Warrants").

During July 2007, the Investors converted all of the $8.0 million in aggregate principal amount of the Notes into an aggregate of 1,990,050 shares of our common stock.

On July 31, 2007, we entered into a Consent to Equity Sales agreements with the Investors whereby the Investors waived the application of Section 7.9 of the Convertible Note Agreement which prohibits us from selling securities under certain circumstances and the Strategic Investor waived their Right of First Refusal pursuant to Section 7.12 of the Convertible Note Agreement with respect to any equity transaction that occurs during the 90 day period following July 9, 2007. In addition, we agreed to amend the warrants issued to the Investors so that the exercise price of the Series A Warrant is decreased to $4.32 per share and the exercise price per share of the Series B Warrant is decreased to $5.13 per share.

*Warrant exercises*

During July 2007, holders of our warrants exercised 333,981 of outstanding warrants for net proceeds to us of $1.3 million.

*Private placement*

On August 1, 2007, we issued 2,356,900 shares of our common stock, par value $0.00001 per share, for an aggregate purchase price of $12,962,950 to institutional investors in a private placement transaction pursuant to a Securities Purchase Agreement, dated as of July 31, 2007 (the "Securities Purchase Agreement"). In connection with the sale of the common stock, we also issued the investors warrants to purchase up to 471,380 shares of our common stock at an exercise price of $7.89 per share exercisable beginning February 1, 2008 and for a period of five years thereafter; and warrants to purchase up to 471,380 shares of our common stock at an exercise price of $9.26 per share exercisable beginning February 1, 2008 and for a period of six years thereafter. In connection with the transaction described

17

Local.Com Corporation

Table of Contents

herein, we also entered into a Registration Rights Agreement which obligates us to register the resale of the shares of common stock sold in the private placement and the shares of common stock issuable upon exercise of the warrants under the Securities Act of 1933, as amended.

In connection with the transaction, GunnAllen Financial Inc. ("GunnAllen") acted as our placement agent. For payment for these services, we will pay GunnAllen fees of $827,777 in cash, of which $250,000 will be paid to Norman K. Farra Jr., a director of ours and an employee of GunnAllen. In addition, we will issue GunnAllen warrants to purchase up to 46,063 shares of our common stock at $7.89 per share and warrants to purchase up to 46,063 shares of our common stock at $9.26 per share. In addition, we will issue Norman K. Farra Jr. warrants to purchase 19,930 shares of our common stock at $7.89 per share and warrants to purchase 19,930 shares of our common stock at $9.26 per share.

Results of Operations

The following table sets forth our historical operating results as a percentage of revenue for the periods indicated. The information is derived from our unaudited financial statements, which, in the opinion of our management, reflects all adjustments that are of a normal recurring nature, necessary to present such information fairly:

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Revenue | 100.0% | 100.0% | 100.0% | 100.0% |
| | | | | |
| Operating expenses: | | | | |
| Search serving | 18.9 | 10.9 | 17.3 | 45.4 |
| Sales and marketing | 92.2 | 93.3 | 94.2 | 86.0 |
| General and administrative | 23.1 | 15.9 | 25.2 | 51.4 |
| Research and development | 10.8 | 18.3 | 12.5 | 24.0 |
| Amortization of intangibles | 4.8 | 7.0 | 4.3 | 7.2 |
| | | | | |
| Total operating expenses | 149.8 | 205.4 | 154.4 | 214.1 |
| | | | | |
| Operating loss | (49.8) | (105.4) | (54.4) | (114.1) |
| | | | | |
| Interest and other income (expense), net | (12.0) | 2.4 | (8.1) | 2.9 |
| | | | | |
| Loss before income taxes | (61.8) | (103.0) | (62.5) | (111.2) |
| | | | | |
| Provision (benefit) for income taxes | 0.0 | 0.0 | 0.0 | 0.0 |
| | | | | |
| Net loss | (61.8)% | (103.0)% | (62.5)% | (111.2)% |

Three months ended June 30, 2007 and 2006

*Revenue*

Revenue was $5.1 million and $3.4 million for the three months ended June 30, 2007 and 2006, respectively, representing an increase of $1.7 million or 51.1%. The increase in our total revenue was primarily due to an increase in the number of revenue generating click-throughs from our local business partially offset by a decrease in the number click-throughs from our national business. We expect revenue from our local business to continue to increase and revenue from our national business to decline.

Revenue from our local business was $4.0 million or 78.7% of our total revenue, revenue from our local international business was $118,000 or 2.3% and revenue from our national business was $969,000 or 19.0% of our total revenue for the three months ended June 30, 2007.

Revenue from our local business was $1.6 million or 47.9% of our total revenue, revenue from our local international business was $74,000 or 2.2% of our total revenue and revenue from our national business was $1.7 million or 49.9% of our total revenue for the three months ended June 30, 2006.

18

Local.Com Corporation

Local.Com Corporation

Table of Contents

We derived 10.8% of our revenue from direct advertisers and 89.2% of our revenue from our Advertiser Network partners during the three months ended June 30, 2007, as compared to 34.9% of our revenue from direct advertisers and 65.1% from Advertiser Network partners during the three months ended June 30, 2006. Our national Advertiser Network partner, LookSmart, represented 1.0% and 15.2% of our total revenue for the three months ended June 30, 2007 and 2006, respectively, our local Advertising Network partner, Yahoo, represented 49.0% and 36.8% of our total revenue for the three months ended June 30, 2007 and 2006, respectively, and our local Advertising Network partner, Idearc, represented 12.0% and 0% of our total revenue for the three months ended June 30, 2007 and 2006, respectively.

*Search serving*

Search serving expenses were $961,000 and $1.4 million for the three months ended June 30, 2007 and 2006, respectively, representing a decrease of $420,000 or 30.4%. As a percentage of revenue, search serving expenses were 18.9% and 40.9% for the three months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was due to decreased payments to our Distribution Network partners associated with our lower national business revenue in the current period. The decrease in percentage was due to a greater portion of our revenue being generated from our local search business which has minimal search serving expenses associated with it. We expect search serving expense to continue to decrease as our revenue from our national business continues to decrease.

*Sales and marketing*

Sales and marketing expenses were $4.7 million and $3.1 million for the three months ended June 30, 2007 and 2006, respectively, representing an increase of $1.6 million or 49.4%. As a percentage of revenue, sales and marketing expenses were 92.2% and 93.3% for the three months ended June 30, 2007 and 2006, respectively. The increase in absolute dollars was primarily due to an increase in advertising and traffic acquisition costs (TAC) for our Local.com web site. We expect sales and marketing expenses to increase as we increase our TAC for our Local.com web site.

*General and administrative*

General and administrative expenses were $1.2 million and $1.5 million for the three months ended June 30, 2007 and 2006, respectively, representing a decrease of $371,000 or 24.0%. As a percentage of revenue, general and administrative expenses were 23.1% and 45.9% for the three months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was primarily due to lower non-cash stock based compensation expense. We expect general and administrative expenses to decrease slightly due to lower non-cash stock based compensation expense.

*Research and development*

Research and development expenses were $551,000 and $618,000 for the three months ended June 30, 2007 and 2006, respectively, representing a decrease of $67,000 or 10.8%. As a percentage of revenue, research and development expenses were 10.8% and 18.3% for the three months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was primarily due to a decrease in consulting fees. We capitalized an additional $154,000 of research and development expenses for website development and amortized $42,000 during the three months ended June 30, 2007. We capitalized $144,000 of research and development expenses for website development and amortized $20,000 during the three months ended June 30, 2006.

*Amortization of intangibles*

Amortization of intangibles expense was $244,000 and $237,000 for three months ended June 30, 2007 and 2006, respectively. This includes the amortization of developed technology and non-compete agreements associated with the Inspire acquisition, along with the amortization of purchased technology and patent associated with the Atlocal asset purchase.

*Interest and other income (expense), net*

Interest and other income (expense) was $(614,000) and $83,000 for the three months ended June 30, 2007 and 2006, respectively, representing a decrease of $697,000. The decrease was due to lower interest income as a result of less cash to invest and an increase in interest expense related to the senior secured convertible notes issued in February 2007.

19

Local.Com Corporation

Table of Contents

*Provision (benefit) for income taxes*

Provision (benefit) for income taxes was $0 and $1,000 for the three months ended June 30, 2007 and 2006 respectively. These amounts represent the minimum amounts required for state and foreign income taxes.

*Net loss*

We had a net loss of $3.2 million and $3.5 million for the three months ended June 30, 2007 and 2006, respectively.

### Six months ended June 30, 2007 and 2006

*Revenue*

Revenue was $10.0 million and $6.5 million for the six months ended June 30, 2007 and 2006, respectively, representing an increase of $3.5 million or 52.9%. The increase in our total revenue was primarily due to an increase in the number of revenue generating click-throughs from our local business partially offset by a decrease in the number click-throughs from our national business.

Revenue from our local business was $8.1 million or 81.1% of our total revenue, revenue from our local international business was $125,000 or 1.3% of our total revenue and revenue from our national business was $1.8 million or 17.6% of our total revenue for the six months ended June 30, 2007.

Revenue from our local business was $2.7 million or 41.4% of our total revenue, revenue from our local international business was $133,000 or 2.0% of our total revenue and revenue from our national business was $3.7 million or 56.5% of our total revenue for the six months ended June 30, 2006.

We derived 12.3% of our revenue from direct advertisers and 87.7% of our revenue from our Advertiser Network partners during the six months ended June 30, 2007, as compared to 35.2% of our revenue from direct advertisers and 64.8% from Advertiser Network partners during the six months ended June 30, 2006. Our national Advertiser Network partner, LookSmart, represented 1.9% and 19.8% of our total revenue for the six months ended June 30, 2007 and 2006, respectively, our local Advertising Network partner, Yahoo, represented 48.4% and 32.5% of our total revenue for the six months ended June 30, 2007 and 2006, respectively, and our local Advertising Network partner, Idearc, represented 13.7% and 0% of our total revenue for the six months ended June 30, 2007 and 2006, respectively.

*Search serving*

Search serving expenses were $1.8 million and $3.0 million for the six months ended June 30, 2007 and 2006, respectively, representing a decrease of $1.2 million or 40.3%. As a percentage of revenue, search serving expenses were 17.7% and 45.4% for the six months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was due to decreased payments to our Distribution Network partners associated with our lower national business revenue in the current period. The decrease in percentage was due to a greater portion of our revenue being generating from our local search business which has minimal search serving expense associated with it.

*Sales and marketing*

Sales and marketing expenses were $9.4 million and $5.6 million for the six months ended June 30, 2007 and 2006, respectively, representing an increase of $3.8 million or 67.4%. As a percentage of revenue, sales and marketing expenses were 94.2% and 86.0% for the six months ended June 30, 2007 and 2006, respectively. The increase in absolute dollars was primarily due to an increase in advertising and traffic acquisition costs (TAC) for our Local.com web site. We expect sales and marketing expenses to increase as we increase our TAC for our Local.com web site.

*General and administrative*

General and administrative expenses were $2.5 million and $3.4 million for the six months ended June 30, 2007 and 2006, respectively, representing a decrease of $841,000 or 25.1%. As a percentage of revenue, general and administrative expenses were 25.2% and 51.4% for the six months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was primarily due to lower non-cash stock based compensation expense.

20

Local.Com Corporation

Table of Contents

*Research and development*

Research and development expenses were $1.3 million and $1.6 million for the six months ended June 30, 2007 and 2006, respectively, representing a decrease of $318,000 or 20.3%. As a percentage of revenue, research and development expenses were 12.5% and 24.0% for the six months ended June 30, 2007 and 2006, respectively. The decrease in absolute dollars was primarily due to a decrease in consulting fees. We capitalized an additional $221,000 of research and development expenses for website development and amortized $85,000 during the six months ended June 30, 2007. We capitalized $144,000 of research and development expenses for website development and amortized $41,000 during the six months ended June 30, 2006.

*Amortization of intangibles*

Amortization of intangibles expense was $481,000 and $473,000 for six months ended June 30, 2007 and 2006, respectively. This includes the amortization of developed technology and non-compete agreements associated with the Inspire acquisition, along with the amortization of purchased technology and patent associated with the Adioctl asset purchase.

*Interest and other income (expense), net*

Interest and other income was $(806,000) and $188,000 for the six months ended June 30, 2007 and 2006, respectively, representing a decrease of $1.0 million. The decrease was due to lower interest income as a result of less cash to invest and an increase in interest expense related to the senior secured convertible notes issued in February 2007.

*Provision for income taxes*

Provision for income taxes was $1,000 and $2,000 for the six months ended June 30, 2007 and 2006 respectively. These amounts represent the minimum amounts required for state and foreign income taxes.

*Net loss*

We had a net loss of $6.2 million and $7.3 million for the six months ended June 30, 2007 and 2006, respectively.

**Liquidity and Capital Resources**

We have funded our business, to date, primarily from issuances of equity and debt securities. Cash and cash equivalents were $6.8 million as of June 30, 2007 and $3.3 million as of December 31, 2006. Marketable securities were $2.0 million as of June 30, 2007 and as of December 31, 2006. We had working capital of $7.7 million as of June 30, 2007 and $3.4 million as of December 31, 2006.

Net cash used in operations was $4.2 million and $5.3 million for the six months ended June 30, 2007 and 2006, respectively. The decrease in cash used in operations was due to a decrease in net loss, a decrease in non-cash stock based compensation and an increase in accounts payable partially offset by an increase in non-cash interest expense and an increase in accounts receivable.

Net cash (used in) provided by investing activities was $(274,000) and $5.4 million for the six months ended June 30, 2007 and 2006, respectively. Investing activity for the six months ended June 30, 2007 consisted of capital expenditures, including $221,000 of capitalized research and development for web site development costs. We expect capital expenditures to continue at the same level. Investing activity for the six months ended June 30, 2006 included proceeds from the sale of marketable securities of $5.4 million.

Net cash provided by financing activities was $8.0 million and $139,000 for the six months ended June 30, 2007 and 2006, respectively. During the six months ended June 30, 2007, we raised gross proceeds of $8.0 million from the issuance of senior secured convertible notes, $14,000 from the exercise of stock options, $7,000 from the exercise of warrants and $5,000 from swing-sale profits.

Management believes, based upon projected operating needs, that our working capital is sufficient to fund our operations for at least the next 12 months.

21

Local.Com Corporation

Page 27 of 31

Table of Contents

*PremierGuide Acquisition*

On July 18, 2007, we completed the acquisition, through a wholly-owned subsidiary, of all of the outstanding capital stock of PremierGuide, Inc., a Delaware corporation and provider of online business directories for an aggregate purchase price of $2.0 million in cash. The allocation of the purchase price to assets acquired and liabilities assumed is still being determined.

*Senior secured convertible notes*

On February 22, 2007, we issued $8.0 million of senior secured convertible notes ("Notes") to two investors (the "Investors") for gross proceeds of $8.0 million. The Notes bore interest at a rate of 9% per annum for a term of two years and were convertible into 1,990,050 shares of our common stock at a conversion price of $4.02 per share. In connection with the sale of the Notes, we also issued to the Investors warrants to purchase up to 796,020 shares of our common stock at an exercise price of $4.82 ("Series A Warrants") and warrants to purchase up to 796,020 shares of our common stock at an exercise price of $5.63 ("Series B Warrants").

During July 2007, the Investors converted all of the $8.0 million in aggregate principal amount of the Notes into an aggregate of 1,990,050 shares of our common stock.

On July 31, 2007, we entered into a Consent to Equity Sales agreements with the Investors whereby the Investors waived the application of Section 7.9 of the Convertible Note Agreement which prohibits us from selling securities under certain circumstances and the Strategic Investor waived their Right of First Refusal pursuant to Section 7.12 of the Convertible Note Agreement with respect to any equity transaction that occurs during the 90 day period following July 9, 2007. In addition, we agreed to amend the warrants issued to the Investors so that the exercise price of the Series A Warrant is decreased to $4.32 per share and the exercise price per share of the Series B Warrant is decreased to $5.13 per share.

*Warrant exercises*

During July 2007, holders of our warrants exercised 333,981 of outstanding warrants for net proceeds to us of $1.3 million.

*Private placement*

On August 1, 2007, we issued 2,356,900 shares of our common stock, par value $0.00001 per share, for an aggregate purchase price of $12,962,950 to institutional investors in a private placement transaction pursuant to a Securities Purchase Agreement, dated as of July 31, 2007 (the "Securities Purchase Agreement"). In connection with the sale of the common stock, we also issued the investors warrants to purchase up to 471,380 shares of our common stock at an exercise price of $7.89 per share exercisable beginning February 1, 2008 and for a period of five years thereafter; and warrants to purchase up to 471,380 shares of our common stock at an exercise price of $9.26 per share exercisable beginning February 1, 2008 and for a period of six years thereafter. In connection with the transaction described herein, we also entered into a Registration Rights Agreement which obligates us to register the resale of the shares of common stock sold in the private placement and the shares of common stock issuable upon exercise of the warrants under the Securities Act of 1933, as amended.

In connection with the transaction, GunnAllen Financial Inc. ("GunnAllen") acted as our placement agent. For payment for these services, we will pay GunnAllen fees of $827,777 in cash, of which $250,000 will be paid to Norman K. Farra Jr., a director of ours and an employee of GunnAllen. In addition, we will issue GunnAllen warrants to purchase up to 46,063 shares of our common stock at $7.89 per share and warrants to purchase up to 46,063 shares of our common stock at $9.26 per share. In addition, we will issue Norman K. Farra Jr. warrants to purchase 19,930 shares of our common stock at $7.89 per share and warrants to purchase 19,930 shares of our common stock at $9.26 per share.

22

· Local.Com Corporation

Table of Contents

### Off-Balance Sheet Arrangements

We do not have any off-balance sheet arrangements that have or are reasonably likely to have a current or future effect on our financial condition, changes in financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that are material to our investors.

### Item 3. Quantitative and Qualitative Disclosures About Market Risk.

We are exposed to market risk relating to interest rate changes.

### Interest Rate Risk

Our exposure to interest rate changes relates to our marketable securities. We invest our excess cash in debt instruments of the United States government.

Investments in fixed rate and floating rate interest earning instruments carry a degree of interest rate risk. Fixed rate securities may have their fair market value adversely impacted due to a rise in interest rates, while floating rate securities may produce less income than expected if interest rates fall. Due to these factors, our future investment income may fall short of expectations due to changes in interest rates or we may suffer losses in principal if forced to sell securities which have declined in market value due to changes in interest rates. A hypothetical 1.00% (100 basis-point) increase in interest rates would have resulted in a decrease in the fair values of our marketable securities of approximately $410,000 and $405,000 at June 30, 2007 and December 31, 2006, respectively.

### Item 4T. Controls and Procedures

### Evaluation of Controls and Procedures

We maintain disclosure controls and procedures (as such term is defined in Rule 13a-15(e) under the Securities Exchange Act of 1934, as amended) ("Exchange Act") that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

In designing and evaluating the disclosure controls and procedures, our management recognized that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives, and that our management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

As required by Rule 13a-15(b) and 15d-15(b) under the Exchange Act, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of June 30, 2007. Based upon the foregoing, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective in reaching a level of reasonable assurance in achieving our desired control objectives.

### Changes in Internal Control Over Financial Reporting

There were no changes during the quarter ended June 30, 2007 that have materially affected or are reasonably likely to materially affect, our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act.

23

Local.Com Corporation

Table of Contents

## PART II — OTHER INFORMATION

### Item 1. Legal Proceedings.

None

### Item 1A. Risk Factors.

Information on risk factors can be found in "Part I, ITEM 1A. Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2006. There were no material changes from the risk factors previously disclosed in our Annual Report on Form 10-K for the year ended December 31, 2006.

### Item 2. Unregistered Sales of Equity Securities and Use of Proceeds.

In June 2007, we issued 104,311 shares of common stock to Xiongwu Xia, an individual, for the patent issued relating to the Atlocal asset purchase.

Exemption from the registration provisions of the Securities Act of 1933 for the transaction described above is claimed under Section 4(2) of the Securities Act of 1933, among others, on the basis that such transaction did not involve any public offering and the recipient was sophisticated with access to the kind of information registration would provide.

### Item 3. Defaults upon Senior Securities.

None

### Item 4. Submission of Matters to a Vote of Security Holders.

None

### Item 5. Other Information.

None

### Item 6. Exhibits.

| Exhibit Number | Description |
| --- | --- |
| 31.1 | Certification of Principal Executive Officer Required by Rule 13a-14(a) of the Securities Exchange Act of 1934, as amended, as Adopted Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2 | Certification of Principal Financial Officer Required by Rule 13a-14(a) of the Securities Exchange Act of 1934, as amended, as Adopted Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1 | Certification of Chief Executive Officer and Chief Financial Officer Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

24

· Local.Com Corporation

Table of Contents

## SIGNATURES

In accordance with the requirements of the Exchange Act, the registrant caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**LOCAL.COM CORPORATION**

August 7, 2007
Date

/s/ Heath B. Clarke
_____
Heath B. Clarke
Chief Executive Officer (principal executive
officer) and Chairman

/s/ Douglas S. Norman
_____
Douglas S. Norman
Chief Financial Officer (principal financial
accounting officer) and Secretary

25

Local.Com Corporation

Table of Contents

## EXHIBITS ATTACHED TO THIS REPORT

| Exhibit Number | Description |
|---|---|
| 31.1 | Certification of Principal Executive Officer Required by Rule 13a-14(a) of the Securities Exchange Act of 1934, as amended, as Adopted Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2 | Certification of Principal Financial Officer Required by Rule 13a-14(a) of the Securities Exchange Act of 1934, as amended, as Adopted Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1 | Certification of Chief Executive Officer and Chief Financial Officer Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

26

B
TO ANSWER

```
<DOCUMENT>
<TYPE>EX-4.7
<SEQUENCE>6
<FILENAME>a32441exv4w7.txt
<DESCRIPTION>EXHIBIT 4.7
<TEXT>
<PAGE>
```

Exhibit 4.7

## CONSENT TO EQUITY SALES

THIS CONSENT TO EQUITY SALES (this "Consent") is made and delivered by HEARST COMMUNICATIONS, INC. (the "Undersigned") to and for the benefit of LOCAL.COM CORPORATION, a Delaware corporation (the "Company") as of this 31st day of July 2007.

### RECITALS

This Consent is made with reference to the following facts and objectives:

A. The Undersigned and the Company entered into a Purchase Agreement dated February 22, 2007 and an Amendment No. 1 to Purchase Agreement dated March 29, 2007 (together, the "Agreement").

B. On July 9, 2007 the Company's Registration Statement on Form S-3 registering for resale the shares issued in connection with the Agreement was made effective by the SEC (the "Effective Date").

C. Pursuant to Section 7.9 of the Agreement the Company cannot, without the written consent of the Undersigned, issue shares of its common stock or common stock equivalents for a period of 90 days after the Effective Date.

D. The Company desires to obtain the Undersigned's written consent in order to have flexibility to effect possible financing transactions pursuant to which the Company would be permitted to issue common stock and common stock equivalents during the time period described in Section 7.9 of the Agreement (the "Equity Transactions"), it being acknowledged by the Company that the Undersigned has no knowledge of any specific transaction or financing plans that the Company may be contemplating.

E. Pursuant to the Agreement, the Company issued to the Undersigned (i) a warrant to purchase an aggregate of 597,015 shares of common stock of the Company at an exercise price (subject to adjustment) of $4.82 per share (the "Series A Warrant") and (ii) a warrant to purchase an aggregate of 597,015 shares of common stock of the Company at an exercise price (subject to adjustment) of $5.63 per share (the "Series B Warrant" and together with the Series A Warrant, the "Warrants").

F. In consideration of the Undersigned's consent to any Equity Transactions, the Company desires to reduce the exercise price per share of each of the Warrants by fifty cents ($0.50) so that the Series A Warrant would have an exercise price of $4.32 per share and the Series B Warrant would have an exercise price of $5.13 per share.

```
<PAGE>
```

### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals and the

respective promises and agreements of the parties set forth herein, the parties agree as follows:

1.  DEFINITIONS. Capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Warrants.

2.  CONSENT. Provided that the Company files a Form 8-K disclosing the terms of this Consent no later than 5:00 p.m., New York time, on August 1, 2007, the Undersigned hereby waives (i) the application of Section 7.9 of the Agreement to the extent that such section would prohibit the Company from engaging in any Equity Transactions during the 90 day period following the Effective Date and (ii) its Right of First Refusal pursuant to Section 7.12 of the Agreement only with respect to any Equity Transaction that occurs during the 90 day period following the Effective Date.

3.  WARRANT PRICE. The Company agrees that the Warrants are hereby amended so that the exercise price per share of the Series A Warrant is decreased to $4.32 per share and the exercise price per share of the Series B Warrant is decreased to $5.13 per share. The Company agrees that the Undersigned may at any time deliver to the Company any warrant that may have been issued to the Undersigned in exchange for replacement warrants reflecting the new exercise prices without any charge to the Undersigned.

4.  MISCELLANEOUS. Except as modified and amended pursuant to this Consent, the Agreement and the Warrants shall remain in full force and effect. This Consent may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Consent will become binding when one or more counterparts hereof, individually or taken together, will bear the signatures of all the parties reflected hereon as signatories.

5.  GOVERNING LAW. This Consent shall be governed by, and construed in accordance with, the laws of the State of New York without regard to the choice of law principles thereof.

-2-

<PAGE>

IN WITNESS WHEREOF, the parties have executed this Consent as of the day and year first above written.

LOCAL.COM CORPORATION
a Delaware corporation

By: /s/ Douglas S. Norman
-----------------------------------------
Name: Douglas S. Norman
Title: CFO

HEARST COMMUNICATIONS, INC.

By: /s/ Kenneth A. Bronfin
---------------------------------------
Name: Kenneth A. Bronfin
Title: President Hearst Interactive Media

-3-

</TEXT>
</DOCUMENT>

C
TO ANSWER

e8vk

. Table of Contents

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT
Pursuant to Section 13 of 15(d) of the Securities Exchange Act of 1934

July 31, 2007
Date of Report (Date of earliest event reported)

# LOCAL.COM CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 000-50989 | 33-0849123 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

One Technology Drive, Building G
Irvine, California 92618
(Address of principal executive offices)

(949) 784-0800
(Registrant's telephone number, including area code)

N/A
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the issuer under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

: e8vk

## TABLE OF CONTENTS

Item 1.01 Entry into a Material Definitive Agreement.
Item 3.02 Unregistered Sales of Equity Securities.
Item 9.01 Financial Statements and Exhibits.
SIGNATURES
Exhibit Index
EXHIBIT 4.1
EXHIBIT 4.2
EXHIBIT 4.3
EXHIBIT 4.6
EXHIBIT 4.7
EXHIBIT 99.1

Table of Contents

## Item 1.01 Entry into a Material Definitive Agreement.

On August 1, 2007, Local.com Corporation (the "Registrant") issued 2,356,900 shares of its common stock, par value $0.00001 per share, for an aggregate purchase price of $12,962,950 to institutional investors in a private placement transaction pursuant to a Securities Purchase Agreement, dated as of July 31, 2007 (the "Securities Purchase Agreement"). In connection with the sale of the common stock, the Registrant also issued the investors warrants to purchase up to 471,380 shares of the Registrant's common stock at an exercise price of $7.89 per share exercisable beginning February 1, 2008 and for a period of five years thereafter; and warrants to purchase up to 471,380 shares of the Registrant's common stock at an exercise price of $9.26 per share exercisable beginning February 1, 2008 and for a period of six years thereafter. In connection with the transaction described herein, the Registrant also entered into a Registration Rights Agreement which obligates the Registrant to register the resale of the shares of common stock sold in the private placement and the shares of common stock issuable upon exercise of the warrants under the Securities Act of 1933, as amended.

In connection with the transaction, GunnAllen Financial Inc. ("GunnAllen") acted as the Registrant's placement agent. For payment for these services, the Registrant will pay GunnAllen fees of $827,777 in cash, of which $250,000 will be paid to Norman K. Farra Jr., a director of the Registrant and an employee of GunnAllen. In addition, the Registrant will issue GunnAllen warrants to purchase up to 46,063 shares of the Registrant's common stock at $7.89 per share and warrants to purchase up to 46,063 shares of the Registrant's common stock at $9.26 per share. In addition, the Registrant will issue Norman K. Farra Jr. warrants to purchase 19,930 shares of the Registrant's common stock at $7.89 per share and warrants to purchase 19,930 shares of the Registrant's common stock at $9.26 per share.

The foregoing description of the Securities Purchase Agreement and the warrants is qualified in its entirety by reference to the Securities Purchase Agreement attached as Exhibit 4.1, and is incorporated herein by reference.

On August 1, 2007, the Registrant issued a press release announcing the execution of the Securities Purchase Agreement. The press release is attached as Exhibit 99.1 and is incorporated herein by reference.

On February 22, 2007, Local.com Corporation (the "Registrant") entered into a Purchase Agreement ("Convertible Note Agreement") with Hearst Interactive Media, a division of Hearst Corporation ("Hearst") and Greenway Capital ("Greenway") (collectively the "Investors") whereby the Registrant issued $8.0 million of senior secured convertible notes ("Notes") for gross proceeds of $8.0 million. The Notes bore interest at a rate of 9% per annum for a term of two years and were convertible into 1,990,050 shares of the Registrant's common stock at a conversion price of $4.02 per share. In connection with the sale of the Notes, the Registrant also issued to the Investors warrants to purchase up to 796,020 shares of the Registrant's common stock at an exercise price of $4.82 ("Series A Warrants") and warrants to purchase up to 796,020 shares of the Registrant's common stock at an exercise price of $5.63 ("Series B Warrants").

On March 29, 2007, the Registrant entered into Amendment No. 1 to the Convertible Note Agreement by and among the Registrant and the Investors whereby the exercise date of the warrants issued to the Investors was amended to be the six month anniversary of the closing date (February 23, 2007) of the Convertible Note Agreement.

On July 31, 2007, the Registrant entered into a Consent to Equity Sales agreements with the Investors whereby the Investors waived the application of Section 7.9 of the Convertible Note Agreement which prohibits the Registrant from selling securities under certain circumstances and the Strategic Investor waived their Right of First Refusal pursuant to Section 7.12 of the Convertible Note Agreement with respect to any equity transaction that occurs during the 90 day period following July 9, 2007. In addition, the Registrant agreed to amend the warrants issued to the Investors so that the exercise price of the Series A Warrant is decreased to $4.32 per share and the exercise price per share of the Series B Warrant is decreased to $5.13 per share.

Table of Contents

**Item 3.02 Unregistered Sales of Equity Securities.**

The first four paragraphs of Item 1.01 are incorporated herein by reference.

Exemption from the registration provisions of the Securities Act of 1933 for the transactions described above is claimed under Section 4(2) of the Securities Act of 1933, among others, on the basis that such transactions did not involve any public offering and the purchasers were institutional, accredited investors and had access to the kind of information registration would provide. Appropriate investment representations were obtained, and the securities were issued with restricted securities legends.

**Item 9.01 Financial Statements and Exhibits.**

4.1    Securities Purchase Agreement dated July 31, 2007 by and among the Registrant and the investors listed on the Schedule of Buyers attached to the Securities Purchase Agreement.

4.2    Registration Rights Agreement dated July 31, 2007 by and among the Registrant and the investors listed on the Schedule of Buyers attached to the Securities Purchase Agreement filed as Exhibit 4.1 hereto.

4.3    Form of Series [A] [B] Warrant.

4.4*   Purchase Agreement dated February 22, 2007 by and among the Registrant, Hearst Communication Inc., SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P. and SRB Greenway Offshore Operating Fund, L.P.

4.5**  Amendment No. 1 to Purchase Agreement dated March 29, 2007 by and among Registrant, Hearst Communication Inc., SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P. and SRB Greenway Offshore Operating Fund, L.P.

4.6    Consent to Equity Sales dated July 31, 2007 made and delivered by SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P., SRB Greenway Offshore Operating Fund, L.P. to and for the benefit of the Registrant.

4.7    Consent to Equity Sales dated July 31, 2007 made and delivered by Hearst Communications, Inc. to and for the benefit of the Registrant.

99.1   Press Release of Local.com Corporation dated August 1, 2007.

* - Incorporated by reference from the Registrant's Current Report on Form 8-K, filed with the Securities and Exchange Commission on February 26, 2007.

** - Incorporated by reference from the Registrant's Current Report on Form 8-K, filed with the Securities and Exchange Commission on April 4, 2007.

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

LOCAL.COM CORPORATION

Date: August 1, 2007

By: /s/ Douglas S. Norman
　　Douglas S. Norman
　　Chief Financial Officer and Secretary

Table of Contents

## Exhibit Index

| Exhibit Number | Description |
| --- | --- |
| 4.1 | Securities Purchase Agreement dated July 31, 2007 by and among the Registrant and the investors listed on the Schedule of Buyers attached to the Securities Purchase Agreement. |
| 4.2 | Registration Rights Agreement dated July 31, 2007 by and among the Registrant and the investors listed on the Schedule of Buyers attached to the Securities Purchase Agreement filed as Exhibit 4.1 hereto. |
| 4.3 | Form of Series [A] [B] Warrant. |
| 4.4* | Purchase Agreement dated February 22, 2007 by and among the Registrant, Hearst Communication Inc., SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P. and SRB Greenway Offshore Operating Fund, L.P. |
| 4.5** | Amendment No. 1 to Purchase Agreement dated March 29, 2007 by and among Registrant, Hearst Communication Inc., SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P. and SRB Greenway Offshore Operating Fund, L.P. |
| 4.6 | Consent to Equity Sales dated July 31, 2007 made and delivered by SRB Greenway Capital, L.P., SRB Greenway Capital (QP), L.P., SRB Greenway Offshore Operating Fund, L.P. to and for the benefit of the Registrant. |
| 4.7 | Consent to Equity Sales dated July 31, 2007 made and delivered by Hearst Communications, Inc. to and for the benefit of the Registrant. |
| 99.1 | Press Release of Local.com Corporation dated August 1, 2007. |

\* - Incorporated by reference from the Registrant's Current Report on Form 8-K, filed with the Securities and Exchange Commission on February 26, 2007.

\** - Incorporated by reference from the Registrant's Current Report on Form 8-K, filed with the Securities and Exchange Commission on April 4, 2007.