UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                    )
DEBORAH DONOGHUE,                                   )
                                                    )
                          Plaintiff,                )    Case Number: 07 CIV. 8550 (LBS)
                                                    )
              - against -                           )
                                                    )
LOCAL.COM CORPORATION and HEARST                    )
COMMUNICATIONS, INC.,                               )
                                                    )
                          Defendants.               )
                                                    )
                                                    )
----------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
HEARST COMMUNICATION INC.'S  MOTION
FOR SUMMARY JUDGMENT**

Alan Mansfield
William A. Wargo
Candace Camarata
**GREENBERG TRAURIG, LLP**
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200
(21) 801-6400 (fax)
mansfielda@gtlaw.com
wargow@gtlaw.com
camaratac@gtlaw.com

*Attorneys for Defendant
Hearst Communications, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................4

    Local.com Sells Shares and Warrants for Local.com Stock to Hearst ..............................4

    Consent to Equity Sales Agreement ..............................................................5

    Board Meeting of Local.com, 9:30 A.M. PT, July 31, 2007 ..................................5

    Execution of the SPA, July 31, 2007 ...........................................................6

    Wire Transfers of Funds from Third-Party Investors to Local.com, August 1, 2007.........6

    Local.com Files a Form 8-K at 4:32 P.M. ET, August 1, 2007 ............................7

    Local.com's Instructions to its Transfer Agent, August 1, 2007 Regarding Release
    of Share Certificates...........................................................................7

    Local.com's Outstanding Shares and the Number of Local.com Shares Owned by
    Hearst .........................................................................................8

PROCEDURAL HISTORY...........................................................................................8

    Plaintiff's Original Complaint and FAC...........................................................8

    Hearst's' Motion for Judgment On the Pleadings..................................................9

ARGUMENT ......................................................................................................11

POINT I  SUMMARY JUDGMENT STANDARD. ...............................................................11

POINT II  THE UNDISPUTED FACTS DEMONSTRATE HEARST WAS NOT A MORE
      THAN TEN PERCENT OWNER OF LOCAL.COM AT  THE TIME OF THE
      ALLEGED DEEMED PURCHASE OF LOCAL.COM  SHARES, AND THUS HAS
      NO LIABILITY UNDER SECTION 16(b)............................................................12

    A.   Liability Under Section 16(b) Requires Hearst To Have Been The
         Beneficial Owner Of More Than Ten Percent Of Local.com's Outstanding
         Shares At The Time Of The Alleged Deemed Purchase. .....................................12

    B.   Hearst Was Not A More Than Ten Percent Owner At The Time Of The
         Alleged Deemed Purchase. ....................................................................15

    C.   Plaintiff Cannot Salvage Her Section 16(b) Claims On the Basis of
         Belated Allegations ...........................................................................18

i

CONCLUSION.............................................................................................................................21

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................ 12

*Cabintaxi Corp. v. Comm'r of Internal Revenue*,
  63 F.3d 614 (7th Cir. 1995) .................................................................................... 17

*Candelaria v. Coughlin*,
  787 F.Supp. 368 (S.D.N.Y. 1992) .......................................................................... 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................. 11

*Dewing v. Perdicaries*,
  96 U.S. 193 (1877)................................................................................................... 14

*Estate of Ginor v. Landsberg*, 960 F.Supp. 661 (S.D.N.Y. 1996) ................................ 11

*In re Chubby's Parkchester, Inc.*,
  94 F.Supp. 701 (S.D.N.Y. 1951) ..................................................................... 14, 16

*Jackson v. Marshall*,
  No. 04 Civ. 3915, 2008 WL 800745 (S.D.N.Y. March 25, 2008)........................... 11

*Kansas, O. & G. Ry. Co. v. Helvering*,
  124 F.2d 460 (3d Cir. 1941) ................................................................................... 14

*Kern County Land Co. v. Occidental Petroleum Corp.*,
  411 U.S. 582 (1973)........................................................................................... 14, 20

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................... 11, 12

*Nerken v. Standard Oil Co.*,
  810 F.2d 1230 (D.C. Cir. 1987) .............................................................................. 13

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) .................................................................................... 12

*Seagram & Sons, Inc. v. Conoco, Inc.*,
  519 F.Supp. 506 (D. Del. 1981).......................................................................... 14, 16

iii

*Steel Partners II, L.P. v. Bell Indus.*,
   315 F.3d 120 (2d Cir. 2002) ............................................................... 20

**State Cases**

*Atterbury v. Consolidated Coppermines Corp.*,
   26 Del. Ch. 1 (1941) ....................................................................... 13

*Brown v. Fenimore*,
   No. 4097, 1977 WL 2566 (Del. Ch. Jan. 11, 1977) ............................... 14

*In re C & M Plastics*,
   194 A.D.2d 1020, 599 N.Y.S.2d 880 (3d Dep't 1993) ..................... 16, 17

*Serdaroglu v. Serdarogulu*,
   209 A.D.2d 600, 621 N.Y.S.2d 806 (2d Dep't 1994) ............................ 16

**Federal Statutes**

15 U.S.C. § 78p(a)(1) ............................................................................ 12

15 U.S.C. § 78p(b) ............................................................................... 12

15 U.S.C.A. § 78m(d)(4) ....................................................................... 13

**Federal Regulations**

17 C.F.R. § 240.16a-1(a)(2) .................................................................. 13

## PRELIMINARY STATEMENT

The Court should grant summary judgment dismissing Plaintiff's First Amended Complaint ("FAC") because the undisputed factual record demonstrates that Plaintiff cannot satisfy a threshold condition of her claims under Section 16(b) of the Securities Exchanges Act of 1934 against Hearst Communications, Inc. ("Hearst"). Plaintiff alleges that Hearst violated Section 16(b) when it made a "deemed purchase" of shares of Local.com Corporation ("Local.com") at 4:32 P.M. Eastern Time ("ET") on August 1, 2007. In order for this alleged deemed purchase to have been subject to Section 16(b), however, Hearst must have owned more than ten percent of the outstanding shares of Local.com at the time of the transaction. But the record demonstrates that Hearst owned *less* than ten percent of Local.com's outstanding stock at 4:32 P.M. ET on August 1, 2007, and thus could not have violated Section 16(b) by making the alleged deemed purchase.[1]

According to Plaintiff, Hearst purchased Local.com shares merely by receiving the right to amended warrants for shares of Local.com. This transaction was well outside the purview of Section 16(b). Far from being an instance of the kind of "speculative abuse" of insider knowledge and power that Section 16(b) is designed to deter, the amended warrants were part of a transaction unilaterally proposed to Hearst by Local.com for Local.com's considerable benefit. The purpose of the transaction was to free Local.com from a ninety day restriction on its ability to issue new shares and share equivalents so that Local.com could acquire new financing from the third-party investors, without breaching its contractual obligations to Hearst. With no

---

[1] This motion is limited to the issue of whether Hearst owned more than ten percent of the outstanding shares of Local.com at the time of the alleged "deemed purchase." Hearst expressly reserves all other defenses and arguments.

knowledge of the terms or timing of any financing transaction contemplated by Local.com, Hearst agreed to provide the waiver sought by Local.com.

However, even if Hearst's agreement to Local.com's unilaterally proposed waiver transaction raised Section 16(b) issues (and it does not), the Court should grant summary judgment on Plaintiff's claims. The FAC alleges that Hearst made a deemed purchase of Local.com stock when its rights to repriced warrants became effective at 4:32 P.M. ET on August 1, 2007, upon Local.com's filing a Form 8-K disclosing the waiver transaction and the private placement of stock with the third-party investors. By 4:32 P.M. ET on August 1, 2007, however, Hearst no longer owned more than ten percent of Local.com's outstanding stock. Instead, because Local.com and the third-party investors had moved forward with their transaction, the third-party investors owned over two million shares of Local.com stock before Local.com filed the Form 8-K. The shares owned by the third-party investors reduced the percentage of outstanding shares of Local.com owned by Hearst to well below the ten percent threshold necessary to create liability under Section 16(b).

Specifically, the documents produced by Local.com, and the deposition of Douglas Norman, Chief Financial Officer of Local.com, establish beyond dispute the following material facts:

- On July 31, 2007, Local.com and various third-party investors executed a Securities Purchase Agreement (the "SPA") under which Local.com agreed to sell and the third-party investors agreed to purchase 2,356,900 shares of Local.com's common stock for an aggregate purchase price of $12,962,950 (Statement of Undisputed Material Facts ("SMF"), ¶¶ 2-3); (SPA, attached as Exh. D to the Declaration of William Wargo, dated July 16, 2008 ("Wargo Decl.")); (Exh. E to Wargo Decl.).

- Also on July 31, 2007, Local.com's Board approved the SPA and all actions necessary to effectuate the terms of the SPA (SMF ¶ 1); (Minutes of the Meeting of the Board of Directors of Local.com Corp., July 31, 2007 ("Minutes"), at 1, attached as Exh. F to Wargo Decl.).

- On August 1, 2007, pursuant to the SPA, the third-party investors wired the purchase money directly to Local.com's bank accounts.  (SMF ¶ 4); (Incoming Wire-Advice of Credit, dated 08/01/2007, attached as Exh. G to Wargo Decl.).  This money was not held in escrow.  (SMF ¶ 6). The third-party investors wired *all* money owed under the SPA to Local.com by 4:06 P.M. ET on August 1, 2007, and the money had been accepted as payment by Local.com.  (SMF ¶ 5); (Deposition of Douglas Norman, dated May 15, 2008 ( "Norman Dep."), 63:20 - 65:23, attached as Exh. C to Wargo Decl.); (Exh. G to Wargo Decl.).

- Once the third-party investors had completed wiring the purchase money, and Local.com received notice of payment, they had completed all their obligations under the SPA. (SMF ¶ 7); (Norman Dep. 64:18-23, attached as Exh. C to Wargo Decl.); (SPA at 22-23, attached as Exh. D to Wargo Decl.).

Based on these undisputed facts, the third-party investors owned the 2,356,900 shares before 4:32 P.M. ET on August 1, 2007.  (Norman Dep. 63:20 - 65:23, attached as Exh. C to Wargo Decl.); (SPA at 22-23, attached as Exh. D to Wargo Decl.); (Exh. E to Wargo Decl.); (Minutes at 1, attached as Exh. F to Wargo Decl.); (Exh. G to Wargo Decl.).

Plaintiff's original Complaint ("Complaint") alleged that Hearst's deemed purchase of Local.com shares occurred on July 31, 2007.  (Compl. ¶ 15, attached as Exh. B to Wargo Decl.). In her FAC, however, filed on December 3, 2007, Plaintiff alleged that the deemed purchase

3

occurred on August 1, 2007, upon the filing of the Form 8-K. (FAC ¶¶ 14, 16, attached as Exh. A to Wargo Decl.). Based on this allegation, Hearst answered the FAC, made a motion for judgment on the pleadings, conducted discovery and took the deposition of Local.com. (Hearst Motion for Judgment on the Pleadings and supporting materials ("Hearst Motion Papers"), attached as Exh. S to Wargo Decl.); (Norman Dep., attached as Exh. C to Wargo Decl.). Now, however, Plaintiff appears to be hedging her bets regarding when the deemed purchase occurred. In a recent letter to the Court, Plaintiff suggests that perhaps the deemed purchase occurred not August 1, 2007, but instead on July 31, 2007 when Hearst executed the waiver agreement. (Letter from Plaintiff's counsel David Lopez to the Court, dated June 17, 2008 ("Lopez Letter"), attached as Exh. M to Wargo Decl.). This suggestion is not based on new facts established during discovery, but instead on Plaintiff's new legal interpretation of the terms of the waiver agreement, a document Plaintiff had months ago, before the filing of the FAC. However, Plaintiff has not sought leave from the Court to file an amended pleading based on this new interpretation. Instead, Plaintiff has insisted that Hearst's motion for judgment on the pleadings be converted into a summary judgment motion on the FAC with its allegation that the deemed purchase occurred on August 1, 2007. (Lopez Letter at 4, attached as Exh. M to Wargo Decl.).

Any attempt by Plaintiff to defend against this motion other than on the basis of the allegations in the FAC should be rejected as untimely and prejudicial.[2]

## STATEMENT OF FACTS

### Local.com Sells Shares and Warrants for Local.com Stock to Hearst

On February 22, 2007, Local.com entered into stock purchase agreements with Hearst, whereby Local.com sold Hearst shares and warrants for shares of Local.com. (Consent to Equity

---

[2]    To date, the motion practice, document production, and the deposition of Local.com in this action, and all associated expenses, have been predicated on Plaintiff's theory as alleged in the FAC.

Sales, between Hearst and Local.com, dated July 31, 2007 (the "Hearst Consent"), at 1, attached as Exh. H Wargo Decl.). Local.com's registration statement registering the stock sold to Hearst became effective on July 9, 2007 (the "Effective Date"). (*Id*.). Based on the terms of its agreement with Hearst, Local.com could not, without the written consent of Hearst, issues shares of its common stock or common stock equivalents for a period of 90 days after the Effective Date without breaching its agreement with Hearst. (*Id*.).

**Consent to Equity Sales Agreement**

Because Local.com wanted to be able to acquire new financing prior to expiration of the 90 day period after the Effective Date, Local.com needed to get a waiver from Hearst to comply with its agreement with Hearst. (Local.com Board Meeting Packet, July 5, 2007, at 8, attached as Exh. I to Wargo Decl).

Pursuant to Local.com's unilateral offer, on July 31, 2007, Hearst executed the Hearst Consent, whereby, "[p]rovided that [Local.com] files a Form 8-K disclosing the terms of this Consent no later than 5:00 p.m., New York time, on August 1, 2007," Hearst waived the restrictions on Local.com issuing new stock and stock equivalents. (Hearst Consent, attached as Exh. H to Wargo Decl.). Local.com agreed to provide Hearst with amended stock warrants reducing the exercise price of the warrants held by Hearst for Local.com stock by fifty cents ($0.50) per share. (*Id*.). Hearst would eventually receive the amended warrants sometime after August 1, 2007. (Norman Dep. 43:16 - 44:3, attached as Exh. C to Wargo Decl.).

**Board Meeting of Local.com, 9:30 A.M. Pacific Time, July 31, 2007**

On the morning of July 31, 2007, commencing at 9:30 A.M. Pacific Time ("PT"), the Board of Directors of Local.com held a meeting in Irvine, California. (Minutes at 1, attached as Exh. F of Wargo Decl.). According to the Minutes of this meeting, the first item addressed by the Board was financing. (*Id.*). After discussion, the Board unanimously approved a private

placement of common stock and warrants. (*Id*.). In this private placement, Local.com entered

into the SPA with a number of third-party investors. (*Id*.). Under the terms of SPA, Local.com

agreed to issue and sell 2,356,900 shares of its common stock to the third-party investors, as well

as to sell warrants to the third-party investors exercisable for additional Local.com shares. (SPA

at 1, attached as Exh. D to Wargo Decl.); (Exhibit A to Minutes, attached as Exh. F to Wargo

Decl.). At the July 31, 2007 meeting, the Board adopted a resolution approving the terms of the

SPA, and its execution by officers of Local.com. (Minutes and Exhibit A to Minutes, attached as

Exh. F to Wargo Decl.).

**Execution of the SPA, July 31, 2007**

With Local.com's Board having approved the SPA and related agreements, Local.com

and the third-party investors executed the SPA on July 31, 2007. (SPA, signature pages,

attached as Exh. D to Wargo Decl.); (Executed Signature Pages to SPA, attached as Exh. E to

Wargo Decl.).

**Wire Transfers of Funds from Third-Party Investors to Local.com, August 1, 2007**

In the morning of August 1, 2007, the third-party investors began wiring millions of

dollars directly to Local.com bank accounts. (SMF ¶ 4); (Norman Dep. 63:20 - 65:13, attached

as Exh. C to Wargo Decl.); (Exh. G to Wargo Decl.). By 1:06 P.M. PT (4:06 P.M. ET), the

third-party investors had wired the entire purchase amount owed under the SPA to Local.com

accounts. (SMF ¶ 5); (Exh. G to Wargo Decl.); (Norman Dep. at 64:24-65:13, attached as Exh.

C to Wargo Decl.). None of this money was held in escrow — either under the terms of the SPA

or in practice. (SMF ¶ 6); (SPA at p. 2, attached as Exh. D to Wargo Decl.); (Norman Dep. 64:7-

10, attached as Exh. C to Wargo Decl. ("Q: These payments were not held in escrow, correct? A:

They were not -- they were not held by an escrow agent.")). Once the third-party investors had

completed wiring the purchase money to Local.com's bank accounts, they had completed all

their contractual preconditions for purchasing Local.com's stock.  (SMF ¶ 7); (Norman Dep. 64:18-23, attached as Exh. C to Wargo Decl.); (SPA at 22-23, attached as Exh. D to Wargo Decl.).

**Local.com Files a Form 8-K at 4:32 P.M. ET, August 1, 2007**

The FAC alleges that at 4:32 P.M. ET, on August 1, 2007, Local.com filed a Form 8-K with the Securities & Exchange Commission.  (FAC at ¶ 14, attached as Exh. A to Wargo Decl.); (Local.com Form 8-K, dated Aug. 1, 2007 ("Form 8-K"), attached as Exh. J to Wargo Decl.).  In this Form 8-K, Local.com disclosed the Hearst Consent, and also stated that  "[o]n August 1, 2007, Local.com Corporation (the 'Registrant') *issued* 2,356,900 shares of its common stock, par value $0.00001 per share, for an aggregate purchase price of $12,962,950 to institutional investors in a private placement transaction pursuant to a Securities Purchase Agreement, dated July 31, 2007."  (Form 8-K at 4, attached as Exh. J to Wargo Decl.) (emphasis added).

**Local.com's Instructions to its Transfer Agent, August 1, 2007 Regarding Release of Share Certificates**

On August 1, 2007 at 9:46 A.M. PT, Local.com sent an email to its stock Registrar and Transfer Agent (the "Transfer Agent"), stating "[a]ttached is the issuance letter with the final Schedule of Buyers for the issuance of restricted common stock relating to our current private placement."  (Exh. K to Wargo Decl.).  The issuance letter attached to the email instructed the Transfer Agent to (1) register in the name of the third-party investors 2,356,900 shares of Local.com Common stock; (2) prepare stock certificates with a legend informing the holder that the shares could not be resold until a registration statement for the shares had been filed pursuant to federal securities law; and (3) deliver the share certificates to the third-party investors.  (*Id*. at 2).  Despite the last instruction, the email transmitting the issuance letter told the Transfer Agent that "[p]lease do not release the certificates until we give approval."  (*Id*. at 1).

7

At 1:45 P.M. PT, Local.com sent an email to its Transfer Agent stating "[w]e have received payment for the common shares reference in our issuance letter dated August 1, 2007." (Exh. L to Wargo Decl.). This email further stated "[y]ou may release the certificates." (*Id.*).

**Local.com's Outstanding Shares and the Number of Local.com Shares Owned by Hearst**

On August 1, 2007, Hearst had warrants exercisable for 1,194,030 shares, and owned another 302,087 shares of Local.com for a total number, for Section 16(b) purposes, of 1,496,117 shares of Local.com. (SMF ¶ 8); (Hearst Consent at LCL 000267, ¶ E, attached as Exh. H to Wargo Decl.); (Local.com's SEC Form 4 Statement of Changes in Beneficial Ownership ("Form 4"), attached as Exh. O to Wargo Decl.); (Lopez Letter at 2, attached as Exh. M to Wargo Decl.).

Upon Local.com's sale of 2,356,900 shares to the third-party investors, Local.com had at least 14,146,556 outstanding shares. (SMF ¶ 9); (Local.com NASDAQ Stock Notification Form ("Notification Form," LCL 000066, at 1, attached as Exh. N to Wargo Decl.); (Local.com Corporation's Form 10-Q ("Form 10-Q"), dated Aug. 1, 2007, at 1, 14, attached as Exh. P to Wargo Decl., attached as Exh. P to Wargo Decl.). It is undisputed that on August 1, 2007, Hearst owned less than ten percent of the outstanding shares of Local.com. (SMF ¶ 11). The only dispute concerns Plaintiff's contention that Hearst's share of Local.com's outstanding shares was not reduced to below ten percent until sometime after 4:32 P.M. ET on August 1, 2007. The undisputed facts, however, refute Plaintiff's contention and demonstrate that Hearst owned less than ten percent of Local.com's outstanding shares before 4:32 P.M. ET.

## PROCEDURAL HISTORY

**Plaintiff's Original Complaint and FAC**

In her original Complaint, dated October 2, 2007, Plaintiff alleged that on "July 31, 2007" Hearst engaged in a "deemed purchase" of Local.com shares, when the exercise price of

warrants for Local.com stock held by Hearst Communication was reduced by fifty cents a share. (Compl. ¶ 15, attached as Exh. B to Wargo Decl.).

On December 3, 2007, Plaintiff filed the FAC. In the FAC, Plaintiff alleged that the so-called deemed purchase of Local.com shares by Hearst occurred on August 1, 2007, not July 31, 2007. Specifically, the FAC alleges that when Local.com's Form 8-K was "accepted for filing at 4:32 Eastern Time" that made "the benefits and obligations of 'The Consent', including the re-pricing [of Hearst's] warrants, irrevocably binding at that time and on that date." (FAC ¶ 14, attached as Exh. A to Wargo Decl.). Thus, according to the FAC, upon the filing of the Form 8-K by Local.com on August 1, 2007, Hearst made a "deemed purchase" of all the shares underlying its warrants for Local.com at the then existing fair market price. (*Id*. ¶ 16). This alleged "deemed purchase" on August 1, 2007, according to the FAC, violated Section 16(b). (*Id.* at ¶¶ 16, 21a).

**<u>Hearst's Motion for Judgment On the Pleadings</u>**

On February 11, 2008, Hearst moved for judgment on the pleadings on the FAC. (Hearst Motion Papers, attached as Exh. S to Wargo Decl.). In making this motion, Hearst relied upon Local.com's August 1, 2007 Form 8-K filed at 4:32 P.M. ET, in which Local.com stated it had "*issued*" more than two million shares to the third-party investors. (Form 8-K, attached as Exh. J to Wargo Decl.) (emphasis added). Hearst argued in its motion that it and the Court were entitled to rely upon Local.com's admission to the Securities & Exchange Commission had it *issued* the shares. (Hearst Mem. of Law in Support of Mot. for Judgment on the Pleadings ("Hearst Mem."), attached as Exh. S to Wargo Decl.). If the shares were issued to the third-party investors prior to 4:32 P.M. ET (as Local.com's filing stated), then Hearst no longer held more ten percent of Local.com's outstanding shares at the time of the "deemed purchase." As Hearst's alleged deemed purchase only violated Section 16(b) if at the time of that purchase it was a more

then ten percent holder of Local.com's stock, Local.com's admission that the shares had already "issued" by that time defeated Plaintiff's FAC and required its dismissal.

At the hearing on Hearst's motion, Local.com's counsel represented that despite the statements made in the Form 8-K, Local.com had not issued the shares to third-party investors until after the filing of the Form 8-K. The Court decided to continue the hearing, and ordered that Hearst and Plaintiff were allowed to take discovery on the issue of the timing of Local.com's sale of the shares to the third-party investors. (Wargo Decl. ¶ 3).

In response to discovery requests from Hearst and Plaintiff, Local.com produced documents regarding the sale of its shares to the third-party investors. Local.com completed its document production on June 6, 2008. On May 15, 2008, Plaintiff and Hearst took the deposition of Mr. Norman, Local.com's CFO. (Norman Dep., attached as Exh. C to Wargo Decl.). Plaintiff has stated that she considers this discovery sufficient on the issue of whether Hearst was an owner of more than ten percent of Local.com stock at 4:32 P.M. on August 1, 2007. (Lopez Letter at 4, attached as Exh. M to Wargo Decl.). In light of the discovery, Plaintiff made no offer to amend her Complaint, but instead insisted that Hearst resolve its motion for judgment on the pleadings by converting the motion to a motion for summary judgment on the FAC as pleaded. (*Id.*).

On June 26, 2008, pursuant to the agreement of Plaintiff and Hearst, the Court ordered that Hearst's motion for judgment on the pleadings be converted to a motion for summary judgment. (Exh. R to Wargo Decl.).

# ARGUMENT

## POINT I

### <u>SUMMARY JUDGMENT STANDARD.</u>

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), the Supreme Court endorsed summary judgment as a "principal" means by which "to isolate and dispose of factually unsupported claims or defenses," and directed courts to apply Rule 56 of the Federal Rules of Civil Procedure "in a way that allows [them] to accomplish this purpose." *Id.* As the Supreme Court declared, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure a just, speedy and inexpensive determination of every action." *Id.* at 327 (quoting Fed. R. Civ. P. 1). Thus, summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Moreover, when the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Jackson v. Marshall*, No. 04 Civ. 3915, 2008 WL 800745, at *2 (S.D.N.Y. March 25, 2008). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Jackson*, 2008 WL 800745 *2 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)), and must "do more than simply show there is some metaphysical doubt as to the material facts." *Estate of Ginor v. Landsberg*, 960 F.Supp. 661, 666 (S.D.N.Y. 1996) (Sand, U.S.D.J.) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The "mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment."

*Candelaria v. Coughlin*, 787 F.Supp. 368, 372 (S.D.N.Y. 1992) (Sand, U.S.D.J.) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**POINT II**

**THE UNDISPUTED FACTS DEMONSTRATE HEARST
WAS NOT A MORE THAN TEN PERCENT OWNER OF LOCAL .COM AT
THE TIME OF THE ALLEGED DEEMED PURCHASE OF LOCAL.COM
SHARES, AND THUS HAS NO LIABILITY UNDER SECTION 16(B).**

**A.    Liability Under Section 16(b) Requires Hearst To Have Been The Beneficial
Owner Of More Than Ten Percent Of Local.com's Outstanding Shares At
The Time Of The Alleged Deemed Purchase.**

In its papers in support of its motion for judgment on the pleadings, Hearst set forth the

principles of liability under Section 16(b).    (*See* Mem. of Law in Support of Motion for

Judgment on the Pleadings, pp. 6-9).    In brief summary, Section 16(b) is applicable to a person

(including a corporation) who owns more than ten percent of a class of equity security registered

under Section 12 of Securities Act of 1934.    ("1934 Act")  15 U.S.C. § 78p(a)(1).    A person can

be held liable under Section 16(b) only for transactions occurring during the period that the

person is a more than ten percent holder of the outstanding shares.    Section 16(b) expressly

excludes from liability "any transaction where such beneficial owner was not such *both at the*

*time of the purchase and sale, or the sale and purchase …*."    15 U.S.C. § 78p(b) (emphasis

added).

In the Opposition to Plaintiff's Motion for Judgment on the Pleadings, Plaintiff cited no

case for the proposition that "at the time" is measured minute by minute or hour by hour, as

opposed to day by day.    Given the purpose of Section 16(b) to curb the abuse of insider power, it

makes no sense to have a draconian rule construed so narrowly as to have liability be measured

minute by minute.    Indeed, this case is the perfect example of why such a narrow construction

would be unreasonable.    Even assuming that Plaintiff is correct, and Hearst's share of

12

Local.com's outstanding shares did not fall below ten percent until sometime after 4:32 P.M. ET, surely no abuse of shareholder power can have taken place in those few minutes or hours. However, even if liability is measured minute by minute, under the undisputed facts, Hearst did not own more than ten percent of Local.com's outstanding shares at 4:32 P.M. ET, so that even under the narrowest construction of the statute, Plaintiff's claims fail.

Under the rules promulgated by the Securities & Exchange Commission for the interpretation of Section 16, the determination of ten percent owner status should be based on the standards of beneficial ownership applicable under Section 13(d) of the 1934 Act. 17 C.F.R. § 240.16a-1(a)(2). Section 13(d)(4) of the 1934 Act states that the determination of the number of securities of a registered class for determining the percentage of ownership is based on the number of securities "outstanding." 15 U.S.C.A. § 78m(d)(4). The number of securities outstanding, therefore, is also the denominator for the ten percent owner calculation. Romeo & Dye, *Section 16 Treatise and Reporting Guide* 100 (2d ed. 2004) (attached as Exh. Q to Wargo Decl).

Section 13 of the 1934 Act does not define an "outstanding" security, and the issue does not appear to have been litigated in the context of Section 13. Nor has Hearst located legislative history that sheds light on the definition of "outstanding" shares as used in Section 13. However, the concept of an "outstanding" security as used generally means a share that is owned or held by a shareholder as opposed to a share that is held as treasury stock by the corporation. *Nerken v. Standard Oil Co.*, 810 F.2d 1230, 1232 (D.C. Cir. 1987) (holding that outstanding stock "'means stock in the hands of shareholders, not stock in the treasury'") (quoting *Atterbury v. Consol. Coppermines Corp.*, 26 Del. Ch. 1, 9 (1941)). The court's discussion in *Nerken* suggests that an outstanding share is a share as to which a stockholder enjoys privileges of ownership, for

example, stock that can be voted by the shareholder, as opposed to stock controlled by the corporation.  810 F.2d at 1232.

Notably, Section 13 used the term "outstanding" securities, *not* "issued" or "issued and outstanding securities."  The omission of "issued" is notable as the terms issued and outstanding are frequently used together.[3]  However, the issuance of securities under the law of most states requires certain formalities, including the formality of the delivery of a share certificate to the holder.  11 Fletcher Cyc. Corp. § 5162 (2007) ("While the issuance or delivery of a certificate is not necessary to qualify one as a shareholder, delivery is, generally speaking, an essential element of the issuance of certificates.").  Ownership of securities and its attendant rights and obligations, however, does not turn on the possession of a share certificate, which is a mere evidence of ownership, not ownership itself.  *In re Chubby's Parkchester, Inc.*, 94 F.Supp. 701, 704 (S.D.N.Y. 1951) (if a person provided funds "to the corporation in payment for stock therein to be purchased by him, he thereby became a shareholder of the corporation notwithstanding that he never received a stock certificate"); *Seagram & Sons, Inc. v. Conoco, Inc.*, 519 F.Supp. 506, 513 (D. Del. 1981) (stating it is a "well settled principle of Delaware law that a certificate of stock is only evidence of share ownership and is not the stock itself.") (citing *Brown v. Fenimore*, No. 4097, 1977 WL 2566, at *2 (Del. Ch. Jan. 11, 1977) ("the status of a stockholder in a corporation is not dependent on the issuance to him of a certificate of stock, a certificate being only an indicia of ownership or a muniment of title."); *see also Dewing v. Perdicaries*, 96

---

[3]    For example, in his deposition, Mr. Norman testified that Local.com makes no distinction in its books and records between "outstanding" and "issued" shares.  (Norman Dep. 78:9-17, attached as Exh. C to Wargo Decl.).

U.S. 193, 196 (1877) ("The stock of such corporations may be held by a valid title without a certificate. The certificate is only one of the *indicia* of title.").[4]

Section 16(b) is meant to "to curb short-swing trading by insiders whose position gives them access to information not available to the investing public and the ability to influence corporate policy." *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 n.23 (1973). Given this purpose, the best reading of "outstanding securities" means that it encompasses all shares actually owned and controlled by persons and entities other the issuer itself, whether or not those shareowners possess share certificates. If "outstanding securities" excluded shareowners who did not have share certificates, Section 16(b) would be both over and under inclusive. The statute would be over inclusive, because shareholders who did not in fact own ten percent of an issuer's securities could be subject to the strictures of Section 16(b) because other shareholders did not have share certificates. The statute would be under inclusive because persons with real influence over the corporation could avoid the restrictions of being more than ten percent holders by not acquiring share certificates.

Accordingly, outstanding securities should mean all securities of a corporation actually owned by persons other than the corporation itself.

### B. Hearst Was Not A More Than Ten Percent Owner At The Time Of The Alleged Deemed Purchase.

Under the undisputed facts, the third-party investors were owners of the 2,356,9000 shares before 4:32 P.M. on August 1, 2007, and thus those shares must be considered as part of

---

[4]    *See also Kansas, O. & G. Ry. Co. v. Helvering*, 124 F.2d 460, 463 (3d Cir. 1941) ("The legal relation of a stockholder to his corporation and his proprietary interest therein are quite independent of the certificate of ownership, which is mere evidence of title. The complete fact of title (to stock) may very well exist without it (a stock certificate). . . .*[T]he existence of outstanding stock does not depend on the issuance of a certificate for the shares thereof*.") (citations omitted) (emphasis added).

Local.com's outstanding shares before the alleged deemed purchase occurred. With those shares counting as part of the total outstanding shares, Hearst's ownership fell below ten percent.

On July 31, 2007, Local.com and the third-party investors executed the SPA, and the SPA was approved by the Local.com's Board. (SMF ¶¶ 1-3). Further, the third-party investors had paid in full for the shares as of 4:06 P.M. ET, on August 1, 2007. (SMF ¶ 5). As Local.com has admitted, once the third-party investors completed payment they had fulfilled all their obligations under the SPA, and had nothing further to do to under the SPA. (SMF ¶ 7).

The third-party investors' execution of the SPA, the approval of Local.com's Board for the transaction, and payment of the agreed-upon consideration is sufficient to establish that the third-party investors owned Local.com's stock. The SPA is governed by New York law (SPA ¶ 9), and under New York law the existence of an agreement to transfer shares, payment of agreed-upon consideration and satisfaction by the purchaser of all conditions precedent to issuance of the shares is sufficient to establish ownership of the shares. *In re Chubby's Parkchester, Inc.*, 94 F.Supp. at 704; *Serdaroglu v. Serdarogulu*, 209 A.D.2d 600, 602-3, 621 N.Y.S.2d 806 (2d Dep't 1994); *In re C & M Plastics*, 194 A.D.2d 1020, 599 N.Y.S.2d 880, 882 (3d Dep't 1993). The third-party investors had fulfilled all the conditions precedent to acquiring ownership of the shares before 4:32 P.M. ET on August 1, 2007, and thus owned the shares before 4:32 P.M. ET. Similarly, under Delaware law, the third-party investors' fulfillment of all their contractual obligations is sufficient to establish ownership. *See Seagram & Sons, Inc.,* 519 F.Supp. at 513 (under Delaware law stockholder status is determined by the subscription to stock and its acceptance by the corporation).

For purposes of calculating Hearst's percentage of ownership for Section 16(b) purposes, the number of shares beneficially owned by Hearst (1,496,117), (SMF ¶ 8), is divided by sum of

the number of outstanding shares (after the third-party investors owned the 2,356,9000 shares, this number was 14,146,556 outstanding shares), and the number of shares that Hearst could acquire directly from the Local.com by the exercise of a derivative instrument, here warrants Hearst held of Local.com stock (1,194,030 shares). Thus, the numerator of the calculation to determine Hearst's share of ownership for Section 16 purposes was, at the time of the filing of Form 8-K on August 1, 2007 and the concomitant alleged deemed purchase, was 1,496,117, and the denominator was 15,340,586:

$$\frac{1,496,117}{15,340,586} = .0975$$

Accordingly, at the time of alleged deemed repricing on August 1, 2007, Hearst was not a more than ten percent owner of Local.com's stock, and the Court should grant summary judgment and dismiss the FAC.

In the June 17, 2008 letter to the Court, Plaintiff places great weight on the fact that Local.com's stock transfer agent did not send share certificates to the third-party investors until some time after 4:32 P.M. ET on August 1, 2007. (Lopez Letter, attached as Exh. M to Wargo Decl.). Here, Plaintiff echoes the position of Local.com. According to the testimony of Mr. Norman, Local.com was "inaccurate" — an inaccuracy it has never made any effort to correct — when it stated in the Form 8-K that is had "issued" the shares to the third-party investors. (Norman Dep. 39:13 - 41:7, attached as Exh. C to Wargo Decl.). Instead, Mr. Norman now claims that the shares did not issue until after 4:32 P.M. ET, when Local.com instructed its Transfer Agent to deliver the share certificates to the third-party investors. (Norman Dep. 9:12 - 10:3, 12:21 - 13:7, attached as Exh. C to Wargo Decl.). But Mr. Norman's claim of "inaccuracy" is of no moment. The delivery of the share certificates is not dispositive of the

issue of ownership. "The mere fact, without more, that [purchaser] was never formally issued any stock certificates does not preclude finding that he had the rights of a shareholder." *In re C & M Plastics*, 194 A.D.2d at 1022, 599 N.Y.S.2d at 882. Thus, "status as a shareholder does not depend on the issuance of a certificate to stock, since the certificate is merely evidence of ownership." *Cabintaxi Corp. v. Comm'r of Internal Revenue*, 63 F.3d 614, 617-18 (7th Cir. 1995); *see also* cases cited in Section II A, *supra*. Accordingly, Local.com's decision to delay physical delivery of the share certificates until after 4:32 P.M. ET is not material to the status of the third-party investors as owners of Local.com stock. The share certificates were a mere badge of ownership. The reality of ownership by the third-party investors was established by the executed SPA, the approval of Local.com's Board, and the nearly $13 million of cash wired directly to Local.com's bank accounts by the third-party investors, and accepted as payment by Local.com.

### C.    Plaintiff Cannot Salvage Her Section 16(b) Claims On the Basis of Belated Allegations

This motion for summary judgment is directed on the allegations of the FAC. Plaintiff filed her amended complaint more than eight months ago. Plaintiff has stood by the FAC through the briefing on the Hearst's motion for judgment on the pleadings, the hearing on Hearst's motion, and document and deposition discovery. At no point has Plaintiff sought leave to file a further amended pleading. Moreover, Plaintiff insisted that Hearst's motion for judgment on the pleadings be converted to a motion for summary judgment on the FAC.

However, in a letter to the Court, Plaintiff hints that she may wish to abandon the FAC. According to Plaintiff, Hearst's Consent might be read as being effective, not on August 1 as Plaintiff has maintained for months, but on July 31, 2007 (as Plaintiff alleged in her original Complaint), and that the deemed purchase therefore occurred on July 31, 2007. (Lopez Letter at

3, attached as Exh. M to Wargo Decl.).  This new theory is not based on new facts, but instead on Plaintiff's new reading of Hearst's Consent — a document which (as it was attached to the Form 8-K filed on August 1, 2007 by Local.com) she has had in her possession since at least the filing of the original complaint last October.  Indeed, as noted Plaintiff made this very allegation in her original Complaint.

However, Plaintiff as matter of litigation strategy has not sought to file an amended pleading.  Even if such a belated amendment were appropriate, Plaintiff has chosen a different course and stands by the FAC.  Having decided to move forward on the basis of the FAC, and insisting that Hearst move for summary judgment on that pleading, in opposition to this motion Plaintiff should be bound by the theory of recovery set forth in the FAC.

In the event Plaintiff seeks leave to amend her pleading for a second time, the Court should also deny the amendment as futile.  Simultaneous with the execution of the Consent, Local.com and the third-party investors executed the SPA.  If, as Plaintiff contends, the Consent conferred beneficial ownership of the repriced warrants on Hearst on July 31, 2007 (prior to the filing of the Form 8-K the next day, and days before the delivery of the repriced warrants), then the SPA similarly conferred beneficial ownership of the shares on the third-party investors, thereby reducing Hearst's share of Local.com's stock below ten percent on July 31, 2007.

Further, the timing of these various events was all at Local.com's discretion, not Hearst's. It was Local.com that decided to execute the two agreements simultaneously, and it was Local.com's decision to accept payment from the third-party investors before filing the Form 8-K.  It was Local.com that decided to wait until after the filing of the Form 8-K to issue the share certificates, and it was Local.com's decision to wait until after all these other events had occurred to send Hearst its repriced warrants.  With Local.com's Board and officers deciding on

the sequence of events and proposing the transaction to Hearst, there is no reasonable view of the facts under which Hearst engaged in the kind of "speculative abuse" that is required to create liability under Section 16(b).  *Kern County*, 411 U.S. at 592; *Steel Partners II, L.P. v. Bell Indus.*, 315 F.3d 120, 125-27 (2d Cir. 2002) (where alleged more than ten percent owner lacked control over timing of transaction there is no "speculative abuse" of the more than ten percent owners power, and thus no liability under Section 16(b)); *Roth v. Perseaus, L.L.C.*, 522 F.3d 242, 244 (2d Cir. 2008) (transaction approved by Board of issuer raises less Section 16(b) concerns than other non-approved transactions).

Therefore, under the theory pleaded in the FAC, as Plaintiff cannot satisfy a necessary statutory element of her claims — that Hearst own more than ten percent of Local.com's outstanding shares at the time of the alleged deemed purchase — the Court should grant summary judgment and dismiss the FAC.

## **CONCLUSION**

In view of the foregoing, this Court should grant summary judgment in favor of Hearst and dismiss the FAC, pursuant to Rule 56, Fed. R. Civ. P.

Date:  July 16, 2008
      New York, New York

                            **GREENBERG TRAURIG, LLP**

                            By: _____/s/  William Wargo_____
                                  Alan Mansfield
                                  William A. Wargo
                                  Candace Camarata
                                  200 Park Avenue
                                  New York, New York 10166
                                  212) 801-2100
                                  (21) 801-6400 (fax)
                                  mansfielda@gtlaw.com
                                  wargow@gtlaw.com
                                  camaratac@gtlaw.com

                                  *Attorneys for Defendant*
                                  *Hearst Communications, Inc.*