```
                                                            1

     UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - - x
     DEBORAH DONOGHUE,                  :

              Plaintiff,                :

                                        :
          -against-                         Case No.
                                        :
     LOCAL.COM CORPORATION and HEARST       07CIV8550(LBS)
     COMMUNICATIONS, INC.,              :

              Defendants.               :

     - - - - - - - - - - - - - - - - - x

              DEPOSITION of DOUGLAS NORMAN, taken by

     Plaintiff at the offices of Kramer, Levin, Naftalis &

     Frankel, LLP, 1177 Avenue of the Americas, New York,

     New York 10036, on Thursday, May 15, 2008 commencing

     at 10:10 o'clock a.m., before Janine Figliozzi, a

     Shorthand (Stenotype) Reporter and Notary Public

     within and for the State of New York.
```

```
                                                                2
 1

 2

 3      A P P E A R A N C E S:

 4
                DAVID LOPEZ, ESQ.
 5                    Attorneys for Plaintiff
                      171 Edge of Woods Road
 6                    Southampton, New York   11968

 7

 8      GREENBERG TRAURIG, LLP
                      Attorneys for Hearst Communications
 9                    200 Park Avenue
                      New York, New York   10166
10
             BY:  ALAN MANSFIELD, Esq., of Counsel
11                WILLIAM A. WARGO, Esq., of Counsel

12
        KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
13                    Attorneys for Local.com
                      1177 Avenue of the Americas
14                    New York, New York   10036

15           BY:  JONATHAN L. FRIED, Esq., of Counsel

16
     ALSO PRESENT:
17
     Jack Spizz, Esq., Office of General
18   Hearst Corporation

19

20

21

22

23

24

25
```

```
                                                                        3
 1                         Norman
 2   D O U G L A S   N O R M A N, called as a
 3        witness, having been first duly sworn by
 4        Janine Figliozzi a Notary Public within
 5        and for the State of New York, was
 6        examined and testified as follows:
 7   DIRECT EXAMINATION BY MR. LOPEZ:
 8             Q     Please state your name.
 9             A     Douglas St. John Norman.
10             Q     Do you appear today for Local.com?
11             A     Yes.
12             Q     What is your relationship to
13   Local.com?
14             A     I am the chief financial officer
15   and secretary.
16             Q     What was your relationship to
17   Local.com on July 31, 2007?
18             A     Same.
19             Q     August 1, 2007?
20             A     Same.
21             Q     Did you participate in the sale
22   and issuance of 2,356,900 shares of common stock
23   by Local.com on or about July 31, August 1,
24   2,007?
25             A     Yes.
```

```
                                                              38
 1                        Norman
 2       Q    For purposes of SEC compliance
 3   reporting, the company uses the numbers found on
 4   the company's maintained Excel ledger, correct?
 5       A    Yes.
 6              MR. MANSFIELD:  Why don't we
 7           mark this as -- David, unless you
 8           have an objection, why don't we just
 9           continue the numbering.
10              MR. LOPEZ:  All right.
11              MR. MANSFIELD:  Make it 10.
12              (Form 8K for Local.com was
13           marked as Plaintiff's Exhibit No. 10
14           for identification, as of this
15           date.)
16       Q    I am handing you what has been
17   marked as Exhibit 10 --
18              MR. FRIED:  Do you have a
19           copy for me?
20       Q    Can you identify it?
21       A    Its' a Form 8-K for Local.com
22   Corporation.
23       Q    Did you sign it?
24       A    Yes.
25       Q    What does it state?
```

                                                              39
1                       Norman
2        A    It states the entry into a
3   material definitive agreement regarding the
4   issuance of shares as well as the consent to
5   equity sales.
6        Q    What is the date of Exhibit 10?
7        A    Date of report says July 31.
8        Q    Why don't you look at the
9   signature page and tell me if that bears a date.
10       A    Date says August 1, 2007.
11       Q    When did you sign it?
12       A    August 1st, 2007.
13       Q    Is this the 8-K that was filed
14  with the SEC at 4:32 Eastern standard time on
15  August 1, 2007?
16       A    Yes.
17       Q    If I can refer you to page 4 of
18  Exhibit 10, the first line under the title item
19  1.01, do you see that?
20       A    Yes.
21       Q    Do you see it says on August 1
22  Local.com Corporation issued 2,356,900 shares of
23  its common stock?
24       A    Yes.
25       Q    Was that statement true at the

```
                                                    40
1                         Norman
2    time the 8-K was filed with the SEC?
3         A    No.
4         Q    Has Local.com supplemented or
5    amended the 8-K that it filed on August 1, 2007?
6         A    No.
7         Q    When did Local.com first become
8    aware that statements filed on August 1, 2007
9    with the Securities and Exchange Commission were
10   inaccurate?
11             MR. FRIED:  Object to the
12        form.
13        A    I don't believe it is inaccurate.
14        Q    So the statement -- first sentence
15   on page 4 of Exhibit 10 is accurate --
16        A    Well --
17        Q    -- is that correct?
18        A    -- in context it is because on
19   August 1st we did issue them.
20        Q    At 4:32 Eastern Standard Time had
21   the shares been issued?
22             MR. FRIED:  Objection,
23        asked and answered.
24        A    No.
25        Q    So at 4:32 was the statement
```

```
                            Norman                        41
1
2     accurate?
3          A    I guess not.
4          Q    It's your testimony that there has
5     been no amendment or supplement to the 8-K to
6     correct the inaccuracy; is that correct?
7          A    Correct.
8          Q    Mr. Norman, what if anything did
9     you do to prepare for today's deposition?
10         A    I reviewed the document requests.
11    I reviewed E-mails relating to that request.  I
12    talked with my corporate counsel.
13         Q    Who is your corporate counsel?
14         A    Rattan and Tucker.
15         Q    Anyone specific?
16         A    Yes.  Derek, D-e-r-e-k, Dundas,
17    D-u-n-d-a-s.  I spoke with David Katzoff.  I
18    spoke to the two other officers of the company
19    to let them know that I had work to do, and I
20    believe that's it -- oh, and spoke with Jonathan
21    Fried.
22         Q    Your counsel here at the
23    deposition?
24         A    Yes.
25         Q    Did you speak with Mr. Lopez?
```

```
                                                               42
 1                         Norman
 2         A    No.
 3         Q    Did you ask Mr. Dundas whether he
 4   had documents that might be responsive to the
 5   document requests?
 6         A    Yes.
 7         Q    What did he say?
 8         A    He said he would -- he actually
 9   produced some.
10         Q    Who drafted the 8-K?
11         A    It was a collaborative effort
12   between our corporate counsel and David Katzoff
13   and myself.
14         Q    Did you review it before you
15   signed it?
16         A    Yes.
17         Q    The 8-K reflects a repricing of
18   warrants owned by Hearst; is that correct?
19              MR. FRIED:  Objection.  The
20         document speaks for itself.
21         A    Yes.
22         Q    Are you familiar with the
23   repricing of --
24         A    Yes.
25         Q    -- the Hearst warrants?
```

```
                                                              43
 1                        Norman
 2        A    Yes.
 3        Q    How are you familiar with them?
 4        A    I reviewed the consents as they
 5   were being drafted and I discussed with counsel,
 6   probably discussed it with the board of
 7   directors during the approval process.  I think
 8   that's pretty much it.
 9        Q    Did there come a time that Hearst
10   received repriced warrants?
11             MR. FRIED:  Object to the
12        form.
13        A    Yes --
14             MR. MANSFIELD:  Withdrawn.
15        Withdrawn.
16        Q    Did there come a time that
17   warrants that were repriced were delivered to
18   Hearst by Local.com?
19        A    I believe so, yes.
20        Q    When was that?
21        A    I'm not sure the date that they
22   received them.
23        Q    What date were they delivered?
24        A    I'm not sure what date.
25        Q    Were they delivered after
```

```
                                                                44
 1                         Norman
 2    August 1, 2007?
 3            A       Most likely.
 4            Q       Tell me what the process would be
 5    for the creation and delivery of repriced
 6    warrants to Hearst in or about August 2007.
 7            A       We would have to have an agreement
 8    and then we would strike the warrants from our
 9    ledger, existing ones, then reissue new ones
10    that reflected the correct price.
11            Q       So let's take this in steps.
12    First, there would have to be an agreement,
13    correct?
14            A       Correct.
15            Q       Was there such an agreement?
16            A       Yes.
17            Q       When was that agreement?
18            A       July 31, 2007.
19            Q       You said the next step would be to
20    strike the warrants from the ledger, correct?
21            A       To enter them into the ledger as
22    well as to strike the existing ones.
23            Q       What ledger are we talking about?
24            A       The warrant ledger.
25            Q       The warrant ledger you said is
```

```
                              Norman                          45

   maintained by Local.com?
           A     Yes.
           Q     Who physically would enter the new
   warrants into the warrant ledger?
           A     David Katzoff.
           Q     Did there come a time he did that?
           A     Yes.
           Q     When?
           A     I'm not sure.
           Q     Would he have done it only on your
   authorization and direction in the normal course
   of Local.com business?
           A     Yes.
           Q     Did there come a time that you
   directed him to enter the new warrants into the
   warrant ledger?
           A     Yes.
           Q     Do you remember when that was?
           A     No.
           Q     Would that have been done orally
   or in writing?
           A     Orally.
           Q     Would there be any written
   reflection of that oral direction?
```

```
                                                    62
1                   Norman
2    297, which counsel provided us after the
3    deposition began today.  Can you identify
4    Exhibit 12?
5         A    These are E-mails from the
6    company's bank to Georgia Thompson who is the
7    company's controller.
8         Q    When you say the company's bank,
9    do you mean Local.com's bank?
10        A    Yes.
11        Q    You have in front of you Exhibit
12   11, correct?
13        A    Correct.
14        Q    I'd like you to look through that
15   and tell me if you can identify it?
16        A    These are advices from the
17   company's bank that were attached to the
18   E-mails.
19        Q    The 2,356,900 shares were
20   purchased pursuant to a PIPE, is that correct?
21        A    Correct.
22        Q    Who were the purchasers?
23        A    There were two funds and then
24   within those funds they actually purchased them
25   with specific -- I guess sub-funds, you would
```

63

Norman

1
2   say, there's 27 entries and within there, there
3   were more entries.
4        Q    For our purposes in this
5   deposition, can we call those funds and the
6   sub-funds the buyers, would we understand each
7   other if we refer to it as the buyers?
8        A    Yes.
9        Q    The buyers were party to the stock
10  purchase agreement that you discussed earlier
11  today, correct?
12       A    Yes.
13       Q    And Local.com was the other party,
14  correct?
15       A    Yes.
16       Q    It was that stock purchase
17  agreement that you said had various conditions
18  of closing, correct?
19       A    Yes.
20       Q    Do the documents contained in
21  Exhibits 11 and 12 reflect payment made by the
22  buyers pursuant to the stock purchase agreement?
23       A    Yes.
24       Q    These were payments for the common
25  shares, correct?

```
                                                              64
 1                         Norman
 2          A     Yes.
 3          Q     The payments reflected on Exhibits
 4    11 and 12 went directly into Local.com's bank
 5    account, correct?
 6          A     Yes.
 7          Q     These payments were not held in
 8    escrow, correct?
 9          A     They were not -- they were not
10    held by an escrow agent.
11          Q     Is there any document that says
12    these payments were held in escrow for any
13    purpose?
14          A     Well, I would refer to the
15    securities purchase agreement because there was
16    obligations on the companies that we have to
17    fulfill as well as the buyer fulfill.
18          Q     After the buyer made payment by
19    wire transfer on August 1st, 2007, was there any
20    obligation left on the part of the buyers to
21    comply with the terms of the stock purchase
22    agreement?
23          A     I don't believe so.
24          Q     When was the last of the payments
25    received by Local.com in its bank account made
```

```
                                                              65
 1                         Norman
 2     by the buyers on August 1st, 2007?
 3            A      We received notice at 1:06 p.m.
 4     Pacific.
 5            Q      So that would be 4:06 Eastern
 6     Standard Time, correct?
 7            A      Correct.
 8            Q      So as of 4:06 Eastern Standard
 9     Time on August 1, 2007, the buyers had made
10     payment for the common shares the buyers
11     purchased under the stock purchase agreement,
12     correct?
13            A      Correct.
14            Q      It's the case, is it not, that
15     Local.com told the transfer agent to wait before
16     delivering the certificates until Local.com was
17     paid, correct?
18                   MR. FRIED:   Object to the
19               form.
20            A      Yes.  There was an E-mail to
21     that -- I think there was multiple E-mails.  One
22     of them may have referred to payment.
23            Q      Look at Exhibit 2 and I direct
24     your attention to the fourth line.
25                   MR. FRIED:   Is there a
```

```
                                                          66
1                          Norman
2     question pending?
3                 MR. MANSFIELD:  I was
4          directing his attention to Exhibit
5          2.
6          Q     Do you have it?
7          A     Yes.
8          Q     Do you see the fourth line of
9     Exhibit 2 that begins, "Once we receive payment,
10    I will send over an issuance letter to issue the
11    shares," do you see that?
12         A     Yes.
13         Q     Is that the E-mail exchange to
14    which you were referring earlier about payment
15    being the condition before the transfer agent
16    was to deliver certificates?
17         A     Payment being a condition.
18         Q     Was there any other condition told
19    to the transfer agent other than payment as
20    relating to the transfer agent's delivery of
21    certificates?
22                MR. FRIED:  Reflected on
23         this E-mail or at all?
24                MR. MANSFIELD:  At all.
25         A     Yes -- wait, what was the question
```