# D

development made it necessary to expand the definition of "equity security,"[15] which the Commission did in 1965[16] by adopting Rule 3a11-1 under the Act.[17] Rule 3a11-1, in its current form, expands the statutory definition to include:

> Any stock or similar security, certificate of interest or participation in any profit sharing agreement, preorganization certificate or subscription, transferable share, voting trust certificate or certificate of deposit for an equity security, limited partnership interest, interest in a joint venture, or certificate of interest in a business trust; any security future on any such security; or any security convertible with or without consideration into such a security, or carrying any warrant or right to subscribe to or purchase such a security; or any such warrant or right; or any put, call, straddle, or other option or privilege of buying such a security from or selling such a security to another without being bound to do so.

The breadth of the definition of equity security is such that any instrument that represents an equity interest in an enterprise, and any right to acquire or dispose of such an instrument, may be deemed an equity security. The most basic types of equity securities issued by corporations are common stock and preferred stock. The term "equity security" also includes rights to acquire common stock or preferred stock, including options, warrants, convertible securities, and similar instruments.

The Commission has further expanded the definition of equity security, at least for purposes of Section 16, to include any "derivative security." Rule 16a-1(c) defines the term derivative security to include any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege at a price that is related to an equity security of the issuer, and any similar security with a value derived from the value of an equity security.[18] The effect of Rule 16a-1(c) is to subject to Section 16 any right that

---

[15] See V LOSS & SELIGMAN, SECURITIES REGULATION 2427 (3d ed., rev. 2003).
[16] See Release Nos. 34-7546 (1965) (proposing release) and 34-7581 (1965) (adopting release).
[17] 17 C.F.R. § 240.3a11-1.
[18] See § 3.03 infra for a discussion of what constitutes a derivative security.

#### [i] Treasury Shares

The number of securities outstanding includes all securities of the class actually issued and outstanding. Shares should not be considered outstanding if they are held by or for the account of the issuer (e.g., treasury shares) or a subsidiary of the issuer.[61]

#### [ii] Securities Issuable Upon Exercise or Conversion of Derivative Securities

When calculating the number of shares beneficially owned for purposes of the ten percent owner calculation, a person must include any securities that the person has the right to acquire within 60 days.[62] Where the securities subject to such a right are not currently outstanding (for example, where the securities may be acquired directly from the issuer upon the exercise of an option or warrant, or upon the conversion of convertible preferred stock), the securities should be deemed outstanding for purposes of determining whether the holder of the right is a ten percent owner (meaning the securities should be added to the denominator as well as the numerator). Securities issuable to another person upon the exercise or conversion of a right held by that person should not, however, be deemed outstanding for purposes of the calculation.[63]

The result of this method of calculating ten percent ownership is that a holder of convertible preferred stock or other derivative security may be deemed to be a ten percent owner of the underlying common stock, even though the holder would not own more than ten percent if all of the outstanding preferred stock or other derivative securities were converted or exercised. If, for example, an issuer had 8,000,000 shares of common stock outstanding, and each of three investors held 1,000,000 shares of unregistered convertible preferred stock (convertible into common stock on a one-for-one basis), each of the investors would be deemed a ten percent owner (based on deemed ownership of 1,000,000 of 9,000,000 shares

---

[61] Section 13(d)(4). Treasury shares were excluded from the denominator even before the Section 13(d) standards became applicable. See Release No. 34-18114, Q.37 (1981).

[62] See Rule 13d-3(d)(1)(i) and § 2.03[5][i] *infra*. If the right to acquire additional securities was acquired for the purpose or effect of changing or influencing control of the issuer, the securities should be considered beneficially owned even if the right is not exercisable within 60 days. *Id.*

[63] *Id.*

of common stock outstanding, or 11.1% of the common stock), even though each investor would own less than ten percent of the common stock if all of the preferred stock were converted.

### [iii] Reliance on Issuer's SEC Reports

Rule 13d-1(j) provides that, in determining the number of shares outstanding, a person may rely on information set forth in the issuer's most recent periodic report (e.g., a Form 10-Q or Form 10-K), or any more recent current report (e.g., a Form 8-K), unless the person knows or has reason to know that the information in the report is inaccurate.[64] Both Form 10-Q and Form 10-K require the issuer to disclose, on the cover page of the report, the number of shares of common stock outstanding as of the most recent practicable date, so holders of common stock should have little difficulty monitoring their percentage ownership. The number of shares of preferred stock outstanding, if any, should appear in the issuer's balance sheet included in the report, but only as of the last day of the period covered by the report, not as of the most recent practicable date. Any issuances or repurchases since the date of the balance sheet might be discussed in a footnote to the financial statements or in the "management's discussion and analysis" section of the report, so a holder of preferred stock hovering near ten percent ownership of the class should read the report in its entirety.[65]

Persons near the ten percent threshold might also be well advised to monitor all of the issuer's SEC filings, not just those specified in the rule. Rule 13d-1(j) charges a security holder with knowledge of any information about outstanding securities that he or she "had reason to know," and a court might hold that information included in an SEC filing subsequent to the issuer's most recent 1934 Act report (e.g., a 1933 Act registration statement) provides reason to know of any information regarding the number of shares outstanding included in that filing.

---

[64] Prior to the 1991 rule changes that made the Section 13(d) standards applicable to the ten percent owner calculation, the SEC's Section 16 rules allowed reliance only on the issuer's annual report or its 1934 Act registration statement. See PETER J. ROMEO & ALAN L. DYE, SECTION 16 REPORTING GUIDE § 6.03[3][d] (1989).

[65] It appears that courts might expect potential insiders not only to review the entire report, but even to detect a discrepancy where the report shows two different numbers of shares outstanding. See *Strauss v. American Holdings, Inc.*, 902 F. Supp. 475, 476 (S.D.N.Y. 1995).