David Lopez, Esq.
171 Edge of Woods Road
P.O. Box 323
Southampton, New York 11969-0323
**Phone:**     631.287.5520
**Fax:**       631.283.4735
**E-Mail:**    DavidLopezEsq@aol.com
Attorney for Plaintiff

Daniel E. Doherty, Esq.
7300 W. 110th Street, Suite 925
Overland Park, Kansas 66210
**Phone:**     913.338.7182
**Fax:**       913.338.7164
**E-Mail:**    ded-law@ddoherty.net
Attorney for Plaintiff *Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBORAH DONOGHUE,

          Plaintiff,         07 Civil 8550 (L.B.S.)

- against -

LOCAL.COM CORPORATION and
HEARST COMMUNICATIONS, INC.,

          Defendants.

_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT OF DISMISSAL
OF HEARST COMMUNICATIONS, INC. AND IN SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT
STRIKING HEARST'S COUNTERCLAIM FOR
<u>BREACH OF CONTRACT</u>**

## TABLE OF CONTENTS

OVERVIEW ..................................................................................... 3

FACTS ............................................................................................. 4

POINT I.    THE DEPOSITION TESTIMONY AND
            DOCUMENT DISCOVERY ESTABLISH
            BEYOND DISPUTE THAT THE DILUTIVE
            SHARES WERE NOT ISSUED UNTIL
            AFTER LOCAL.COM'S FORM 8-K WAS
            FILED WITH THE SECURITIES &
            EXCHANGE COMMISSION .............................................. 5

            Facts Established By Discovery ......................................... 5

            The Time Of Day When Shares Issued
            Is Cognizable ..................................................................... 7

            The Time When A Person Becomes A Shareholder
            Is A Matter Of Contract ..................................................... 8

POINT II.   PLAINTIFF IS AGNOSTIC CONCERNING THE
            TESTIMONY OF MR. NORMAN AS TO HIS
            UNDERSTANDING OF WHEN THE RE-PRICING
            TOOK PLACE .................................................................. 10

POINT III.  HEARST'S FIRST COUNTERCLAIM (BREACH
            OF CONTRACT) SHOULD BE SUMMARILY
            DISMISSED ..................................................................... 11

POINT IV.   THE "UNORTHODOX TRANSACTIONS
            DOCTRINE" IS NOT BEFORE THE COURT
            ON THESE MOTIONS ..................................................... 11

CONCLUSION ............................................................................... 13

## OVERVIEW

Hearst Communications, Inc. brought a motion to dismiss under Rule 12(c) predicated on the contention that shares of Local.com Corporation sufficient to dilute it out of a 10% beneficial ownership position had been issued by Local.com prior to the effectiveness of the re-pricing of Hearst's warrants. A warrant re-pricing under the Section 16(b) rules is deemed a purchase of the shares underlying the warrants. Within six months of the re-pricing Hearst had sold more than 1,000,000 shares of like tenor.

The basis of Hearst's dismissal motion was a parsing of the verb tense used in a Form 8-K report filed by Local.com with the Securities & Exchange Commission on August 1, 2007, to report its sale of the dilutive shares. The past tense was used and so, Hearst contended, it was manifest that the issuance took place prior to the filing. As the filing of the Form was a condition precedent to the sale under the Share Purchase Agreement, Plaintiff demurred and at the hearing of March 13, 2008, Plaintiff's counsel sought and was granted permission to put the matter to rest by taking a brief deposition. Heart requested and was granted permission for documentary discovery limited to the sequence of events surrounding the sale of new shares by Local.com, the re-pricing of Hearst's warrants and the filing of the Form 8-K. That deposition and document discovery establish that the parsing of verbs is no way to arrive at objective facts and that paragraph 6 of Plaintiff's "First Amended Complaint" is an accurate statement of fact.

> "6.    At all times relevant to liability hereunder HEARST COMMUNI-
> CATIONS, INC. was an insider of LOCAL.COM CORPORATION, to
> wit: a beneficial owner of more-than-10% of the common stock of LOCAL.
> COM CORPORATION."
>
> Exhibit A to Declaration of William Wargo
> In Support...Of Motion For Summary Judgment.

Whether the issuance of shares took place prior or subsequent to the filing of Local.com's Form 8-K has direct bearing on Hearst's "First Cross-Claim". A copy of the "Answer And Cross-Claims Of Hearst Communications, Inc." appears as Exhibit B to the "Declaration Of William Wargo" on the Rule 12(b) motion, Exhibit S to the "Declaration Of William Wargo In Support...Of Motion For Summary Judgment." In its entirety the First Cross-Claim reads:

> "FIRST CROSS-CLAIM
> (Breach of Contract)
>
> "18.   Hearst Communications repeats and re-alleges Paragraphs 1-17 of its cross-claims as if fully set forth herein.
>
> "19.   On August 1, 2007, Local.com committed a breach of the Consent by issuing 2,356,900 shares of its common stock to institutional investors before it filed a Form 8-K with the Securities & Exchange Commission disclosing the terms of the Consent."

Accordingly Plaintiff moves under Rule 56 to strike the First Cross Claim as, under the undisputed facts, the issuance of shares took place after the Form 8-K was filed.

## FACTS

The Plaintiff relies on her "Local Rule 56.1 Counterstatement of Undisputed Material Facts" for her opposition to Hearst's "Motion For Summary Judgment" and in support of her "Cross Motion for Summary Judgment".

POINT I.  THE DEPOSITION TESTIMONY AND DOCUMENT
DISCOVERY ESTABLISH BEYOND DISPUTE THAT
THE DILUTIVE SHARES WERE NOT ISSUED UNTIL AFTER
LOCAL.COM'S FORM 8-K WAS FILED
WITH THE SECURITIES & EXCHANGE COMMISSION

**Facts Established By Discovery**

The arguments and factual citations appearing under this Point are, to a large degree, duplicative of those made in the letter of Plaintiff's counsel of June 17, 2008, to the court. We repeat them here to expand upon them and to place them formally into the record. The lettering of Exhibits continues that of the Wargo declaration.

The deposition testimony, supported by produced documents, establishes that:

1.    The issuance of dilutive shares was subject to contractual pre-conditions including the filing of a Form 8-K with the Securities & Exchange Commission. *Norman Deposition, Exhibit T to Declaration of David Lopez in Opposition..., p.4, l.13 to p 5, l.3.*

2.    That was satisfied at 4:32 P.M. Eastern time as evidenced by a time stamped "Submission Notification" emitted by the Securities & Exchange Commission. *Norman Deposition, Exhibit T, p. 11, l.14 to p. 12, l.8; Pltfs. Ex. 6 on the Deposition, Exhibit U to Declaration of David Lopez in Opposition....*

3.    At 4:32 P.M. Eastern time the shares had not been issued. *Norman Deposition, Exhibit T, p. 40, l. 20 to l. 24.*

4.    At 1:45 P.M. Pacific time, 4:45 Eastern time, SOME 13 MINUTES AFTER THE FORM 8-K HAD BEEN FILED, authorization was e-mailed from Local.com by one David Katzoff to the stock transfer agent for Local.com to issue the dilutive shares. *Norman Depositon, Exhibit T, p. 9, l.4 to p. 10, l.18; Pltfs Ex. 4 on the Deposition, Exhibit V to Declaration of David Lopez in Opposition....*

5

5.  At 2:44 P.M. Pacific time, 5:44 Eastern time, the transfer agent for Local.com e-mailed back copies of certificates which it had issued in response to that instruction. *Norman Deposition, Exhibit T, p.10, l.19 to p. 11, l.14; Pltfs. Ex. 5 on the Deposition, Exhibit W to Declaration of David Lopez in Opposition....*

6.  No physical delivery of shares took place prior to 2:44 Pacific Time, 5:44 Eastern time. *Norman Deposition, Exhibit T, p. 80, l. 12 to p. 81, l. 17.*

7.  The witness was asked:

    "Q.  Is there any doubt in your mind, from the documentation in front of you and from your own recollection, that the 8-K posted or was accepted by the Securities & Exchange Commission before issuance instructions were given for the shares issued?

    "A.  No.

    "Q.  No doubt whatsoever?

    "A.  No." *Norman Deposition, Exhibit T, p. 12, l.18 to p. 13, l.7.*

8.  Prior to the dilutive share issuance the number of shares of Local.com common stock outstanding was either 11,784,656 or 11,789,656 (an insignificant discrepancy for purposes of the case). *Norman Deposition, Exhibit T, p. 15, l.16 to p. 17, l. 12; Pltfs Ex. 8 on the Deposition, Exhibit X to Declaration of David Lopez in Opposition....*

Applying the analysis appearing at Point II(b) of Hearst's main brief on the Rule 12(c) motion, Hearst was the beneficial owner of 1,496,117 shares of Local.com common stock at the moment the Form 8-K was filed. This ownership was by reason of of its ownership of warrants to acquire 1,194,030 shares and the ownership of 312,087 shares

outstanding. Adding the warrant shares to the total number of shares of Local.com common stock outstanding produces a denominator of 12,983,686. Hearst was thus the beneficial owner of 11.523% of the common stock of Local.com issued and outstanding at 4:32 P.M., Eastern time, on August 1, 2007, thirteen minutes before issuance instructions were given for the dilutive shares.

These are the facts -- objective, documented and not subject to dispute. They are also the facts that Hearst studiously avoids on its motion for summary judgment. Hearst's version of Mr. Norman's deposition, *Exhibit C to Declaration of William Wargo In Support Of ... Summary Judgment,* blithely skips from page 3 to page 38 of the transcript passing over the whole of the direct examination of Plaintiff's counsel and essentially every fact necessary to the determination of its motion.

And what of Heart's earlier sole and total reliance for its motion to dismiss on the use of the past tense in a document filed within minutes of the event it was intended to describe? Hearst's counsel scores an own-goal by closely pressing the witness, Mr. Norman, until he admits that the use of the past tense in the Form 8-K was not accurate. *Norman Deposition, Exhibit T, p 38, l. 16 to p. 41, l. 3.*

### The Time Of Day When Shares Issued Is Cognizable

Hearst chides Plaintiff for citing "no case for the proposition that 'at the time' is measured minute by minute or hour by hour, as opposed to day by day". Hearst Brf. p. 12. The intended argument appears to be that since Hearst was not a more-than-10% beneficial owner at the end of the day on August 1, 2007, it should not be considered one for most of the day or at the moment its warrants were re-priced. The cases Hearst's counsel seeks include *Gryl v. Shire Pharmaceuticals Group, PLC,* CCH Fed. Sec. L. Rep.

Par. 91,527, 2001 WL 1006628 (S.D.N.Y. 2001) in which Plaintiff's counsel advanced the argument Hearst now seeks to press. Ruefully we advise the court that, contrary to *2 Blackstone's Commentaries 141*, we lost. Perhaps that is because the Supreme Court in *United States v. Will,* 449 U.S. 200, 225 n. 29, 66 L. Ed. 2d 392, 101 S. Ct. 471 (1980) instructed that "whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily as into any other unit of time." In the Section 16(b) context, *See: Lewis v. Bradley*, 599 F. Supp. 327, 330 (S.D.N.Y. 1984) where a director was held not liable for short-swing trading because he resigned immediately prior to selling the issuer's securities.

"At the time" is plain English and means what it says.

Hearst was an insider for many months preceding August 1, 2007, traded over a million shares during the six months preceding that date with presumed access to insider information, entered into the transaction that resulted in the re-pricing of its warrants while an insider and was an insider "at the time" of the re-pricing. It ceased to be an insider after 4:45 P.M. Eastern time and after the public markets had closed for the day.

Where in those facts is there an argument for exculpation?

### The Time When A Person Becomes A Shareholder Is A Matter Of Contract

Plaintiff generally agrees that a share certificate is an *indicium* of ownership, not necessarily ownership itself. What constitutes share ownership is a matter of contract between the issuer and the shareholder.

> "Ownership of shares of a corporation is a contractual relationship created by the agreement and consent of the corporation *and* the shareholder."
> *Jupiter Corp. v. U.S.*, 2 Cl. Ct. 58, 64 (emphasis added)

If the contract requires more than payment, mere payment does not make the payor a shareholder. The Share Purchase Agreement, at Sec. 7(ix), required satisfaction of "all covenants, agreements and conditions required by the Transaction Documents" and that all necessary consents be obtained by Local.com prior to the issuance of shares to the institutional buyers (Sec. 3(e)). This condition could be waived only by written notice from the purchasers to Local.com (Sec.7). It was not waived. The Consent obtained from Hearst, in turn, required that the Form 8-K be filed with the Securities & Exchange Commission before becoming effective. And the Share Purchase Agreement required an officer of Local.com to deliver a certificate of compliance with attestation, *inter alia*, that Hearst's Consent was effective. Prior to the filing of the Form 8-K and the effectiveness of Hearst's Consent the institutional buyers had no contractual rights to be treated as shareholders. Their payment earlier in the day was subject to the terms of the Stock Purchase Agreement and without having waived compliance they could not, for example, have demanded their share certificates earlier. Payment was not the last condition precedent to issuance. *Norman Deposition, Exhibt T, p. 68, ls. 8-18; p. 74, ls. 21-25.*

Hearst argues that:

"The SPA is governed by New York Law (SPA Par. 9), and under New York law the existence of an agreement to transfer shares, payment of agreed-upon consideration, and *satisfaction by the purchaser of all conditions precedent to the issuance of shares* is sufficient to establish ownership of the shares. [Emphasis Added; Citations omitted] *Hearst Memorandum In Support Of... Motion For Summary Judgment*, p. 16.

One of the conditions precedent applicable to the purchasers was that they observe the terms of the Share Purchase Agreement including waiting for compliance by Local.com.

with its terms (or waiver, which did not occur). The purchasers did not become owners until those terms were met and that did not happen until after 4:32 P.M., Eastern time.

Local.com is a Delaware corporation (Complaint, Par. 2; Hearst Answer, Par. 2) and as such its issuance of shares is a matter of Delaware law. Section 161 of the Delaware Corporation Code provides that shares may be issued out of authorized shares only by authority of the corporation's directors. The directors of Local.com authorized the issuance of shares to the institutional investors through the mechanism of the Stock Purchase Agreement (Hearst Local Rule 56.1 Statement, Par. 1). Prior to 4:32 P.M. the requirements of the Stock Purchase Agreement had not been met and thus the terms of the authorization had not been complied with. Without an operative authorization the shares could not be issued as a matter of law.

### POINT II    PLAINTIFF IS AGNOSTIC CONCERNING THE TESTIMONY OF MR. NORMAN AS TO HIS UNDERSTANDING OF WHEN THE RE-PRICING TOOK PLACE.

Hearst, at page 18 of its brief on the motion, frets over its perception that "Plaintiff hints that she may wish to abandon the FAC. According to Plaintiff, Hearst's Consent might be read as being effective, not on August 1 as Plaintiff has maintained for months, but on July 31, 2007 (as Plaintiff alleged in her original Complaint), and that the deemed purchase therefore occurred on July 31, 2007".

As with the parsing of verb tenses to divine objective facts, briefing to counter an imagined intention of another can lead to wheel-spinning and naked speculation.

Plaintiff called to the attention of the court Mr. Norman's testimony to the effect that he considered the re-pricing effective at the time of the signing of the Consent rather

10

than at the time of compliance with its terms because it came up in discovery as an alternative theory in support of Paragraph 6 of the First Amended Complaint. It is not a theory devised by Plaintiff's counsel and it is one as to which Plaintiff and her counsel are wholly agnostic. The First Amended Complaint pleads the facts and legal theory of Plaintiff's case and we see no reason to change it to pursue an alternative theory spontaneously generated by a witness in discovery.

The undisputed facts adequately support the case as pleaded.

### POINT III    HEARST'S FIRST COUNTERCLAIM (BREACH OF CONTRACT) SHOULD BE SUMMARILY DISMISSED

The First Counterclaim pleaded by Hearst is to the effect that Local.com breached its contract -- the Consent -- by selling 2,356,900 shares to the institutional investors prior to filing the Form 8-K. Its full text appears at page 3 of this brief.

The undisputed facts demonstrate that the sale did not occur until the Form 8-K had been filed with the Securities & Exchange Commission and the terms of the Securities Purchase Agreement had been complied with.

Upon the undisputed facts the First Counterclaim has no basis whatsoever and, on the record before the court, should be summarily dismissed.

### POINT IV    THE "UNORTHODOX TRANSACTIONS DOCTRINE" IS NOT BEFORE THE COURT ON THESE MOTIONS

"This motion is limited to the issue of whether Hearst owned more than ten percent of the outstanding shares of Local.com at the time of the alleged 'deemed purchase.'" This is how Hearst expresses the confines of its motion and this is how Plaintiff understands the motion and cross-motion to be circumscribed.

Nevertheless, Hearst repeatedly seeks to introduce its affirmative defense of what, in the jargon of Section 16(b) litigation, is known as the "unorthodox transactions doctrine" or "pragmatic analysis" or the holding of *Kern County Land Company vs. Occidental Petroleum Corp.*, 411 U.S. 582 (1973). The "unorthodox transactions doctrine" is not before the court on this motion. But since it has raised its head in Hearst's brief Plaintiff will very briefly state why it has no place in this case.

Justice White, writing for the Court, had this to say of the reason for the existence of pragmatic analysis:

> "In deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent -- the realization of short-swing profits based upon inside information.
> *Id.* at 504.

Three elements must be present for the doctrine to apply.

First: The transaction at issue must be a "borderline transaction", one in which it is not clear that a sale or purchase, in the sense of cash for stock, or consideration for shares, is present. Options, warrants, puts, calls, strips and straddles long troubled the courts for their place in the regulatory scheme. Sometimes, they were deemed "unorthodox transactions; other times not. Effective May 1, 1991, however, the Securities & Exchange Commission put into place a regulatory regimen for the treatment of all derivative securities. The re-pricing of Hearst's warrants is squarely within that regimen and in particular of Rule 16b-6. There is nothing borderline about a type of transaction which is the subject of specific administrative regulation; and the Supreme Court has instructed the lower courts, that deference is to be given to the administrative agency's construction of its own regulations. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1991); *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467

U.S. 837, (1984); *Pauley v. BathEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991). The Second Circuit has recognized and applied this instruction. *Bush v. Bessemer Venture Partners, L.P.*, 464 F. 3d 202, 207-208 (2d Cir. 2006).

Second: Application of the unorthodox transactions doctrine is now generally limited to forced transactions, as was the case in *Kern County*. The insider must be without control over the purchase or sale and that is not the case here. Hearst accepted the re-pricing of its warrant voluntarily as its reward for allowing Local.com to seek necessary funding from others after it had completed its own sale of more than one million shares and no longer needed the protection of market stabilization.

Third: The insider must have no possibility of access to inside information. That clearly is not present here as Hearst knew of the imminence of a substantial financing by Local.com, recognized the insider nature of that information and made it a condition before its Consent would be effective that a Form 8-K be filed with the Securities & Exchange Commission announcing the financing to the public.

All three conditions must be present for the unorthodox transactions doctrine to be available. None is present here.

When the issue is properly before the court Plaintiff will address it in more detail and may seek *amicus* participation by the Commission whose institutional interest is implicated in Hearst's special pleading and claim of right for exemption from the Commission's uniform regulatory scheme for derivative securities.

## CONCLUSION

No genuine issue of material fact surrounds the timing of the effectiveness of the re-pricing of Hearst's warrants. That re-pricing and the deemed purchase of the

underlying shares preceded the issuance of dilutive shares. Hearst's motion for summary judgment should be denied and Plaintiff's cross-motion for dismissal of Hearst's "First Counter-Claim (Breach of Contract)" should be granted.

Dated:  Southampton, New York
        July 30, 2008

                                            /s/ David Lopez            .
                                            David Lopez, Esq.
                                            Attorney for Plaintiff


Dated:  Overland Park, Kansas
        July 30, 2008

                                            /s/ Daniel E. Doherty      .
                                            Daniel E. Doherty, Esq.
                                            Attorney for Plaintiff *Pro Hac Vice*