UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH DONOGHUE,

                Plaintiff,

    v.

LOCAL.COM CORPORATION and
HEARST COMMUNICATIONS, INC.,

                Defendants.

**AMENDED MEMORANDUM AND ORDER**
No. 07 Civ. 8550 (LBS)

SAND, J.,

Plaintiff Deborah Donoghue, an investor in Local.com Corp., brings this shareholder derivative action against Defendant Hearst Communications, Inc. to recover short-swing profits under section 16(b) of the Securities Exchange Act of 1934. Donoghue alleges that Hearst violated section 16(b) on August 1, 2007 by selling and purchasing matching warrants of Local.com within a six-month period while maintaining insider status.[1] Hearst has moved for summary judgment to dismiss Plaintiff's action. Hearst asserts that it was not an insider at the time of its transaction because new shares of Local.com were outstanding prior to its deemed purchase. For the reasons set forth below, Hearst's motion for summary judgment is granted.[2]

---

[1] "Insiders" are defined under section 16(b) to include any persons who own more than ten percent of any class of the issuer's non-exempt, registered equity security. *See* 15 U.S.C. § 78(p).

[2] This motion for summary judgment only addresses the question of whether Hearst was a ten percent owner of Local.com's common stock when the alleged deemed purchase was made. The Court has no occasion to rule on the question of whether a cancellation of pre-existing warrants and a re-granting of new warrants constitutes a deemed purchase under section 16(b), as asserted by Plaintiff, because the issue has not been raised at this stage in the litigation. (Tr. Oral Arg. at 2–3, Sept. 18, 2008.)

**I.     Background**

The facts laid out below are not in dispute. On July 9, 2007, Hearst effectively purchased shares and warrants for shares of Local.com.[3] Based on the terms of Hearst's purchase agreement, Local.com could not issue any new shares of its common stock for a period of ninety days, without the written consent of Hearst. Subsequent to that agreement, Local.com determined that it wished to acquire new financing prior to the conclusion of the ninety day period. On July 31, 2007, Hearst consented to the issuance of new shares "[p]rovided that [Local.com] files a Form 8-K disclosing the terms of this Consent no later than 5:00 p.m., New York time, on August 1, 2007 . . . ." (Hearst Consent Equity Sales, Ex. H Wargo Decl.) Under the terms of Hearst's written consent, Local.com agreed to provide Hearst with amended stock warrants reducing the exercise price of Hearst's warrants for Local.com stock by fifty cents ($0.50) per share at the time that the Form 8-K was filed.[4] Upon providing its written consent, Hearst's role in the issuance of the new stock was complete.

Also on July 31, 2007, Local.com's Board of Directors met and approved a private placement of common stock and warrants to third party investors not related to this case. Local.com entered into a Securities Purchase Agreement ("SPA") with the third-party investors that outlined the issuance and sale of, among other things, 2,356,900 shares of its common stock. At the time of the Board meeting, and until the new shares became outstanding securities, Hearst owned more than ten percent of Local.com's

---

[3] To be more specific, on February 22, 2007 Hearst entered into a stock purchase agreement with Local.com. The registration statement, registering the stock sold to Hearst, became effective on July 9.
[4] Between July 9, 2007 and August 1, 2007, Hearst was the owner of a Series A Warrant under whose terms shares of Local.com common stock were issuable at an exercise price of $4.82 per share and the owner of a Series B Warrant under whose terms shares of Local.com common stock were issuable at an exercise price of $5.63 per share. Under the terms of Hearst's consent agreement, upon the filing of the 8-K the exercise price of the Series A Warrant was to be reduced to $4.32 per share and the exercise price of the Series B Warrant was to be reduced to $5.13 per share.

2

common stock.[5] However, Hearst no longer owned more than ten percent of Local.com's common stock once the new shares became outstanding securities because the new securities diluted Hearst's percentage ownership of Local.com.[6]

On August 1, 2007, the third party investors paid Local.com for the new shares. The money was wire transferred directly to Local.com bank accounts. (Norman Dep. 63:20–65:13.) Upon completing the full payment at 4:06 p.m. (Wire Transfer Notice Local.com Bank Account, Ex. G Wargo Decl.),[7] the third parties were not required to take any other affirmative steps under the SPA (SPA at 22–23, Ex. D Wargo Decl.). Concurrently, Local.com was arranging for the release of its share certificates. At 12:46 p.m. on August 1, Local.com sent an email to its stock Registrar and Transfer Agent ("Transfer Agent") asking him to prepare the release of the certificates but instructing that he should "not release the certificates until we give approval." (Email Local.com to Transfer Agent, Ex. K Wargo Decl.) At 4:32 p.m., Local.com filed a Form 8-K with the Securities & Exchange Commission in compliance with a condition of Hearst's consent. At 4:45 p.m., Local.com sent an email to its Transfer Agent instructing him to release the share certificates. The Transfer Agent for Local.com emailed back-copies of the certificates to the third parties at 5:44 p.m.

As a result of the sequence of events of August 1, Plaintiff brought a shareholder derivative action against Hearst for violating section 16(b) by being insider who sold and purchased matching warrants of Local.com within a six-month period. Specifically,

---

[5] Prior to the issuance of the new shares to the third parties, Local.com had a total of 12,983,686 shares outstanding; Hearst had warrants exercisable for 1,194,030 shares of common stock and owned 302,087 outstanding shares of common stock. Hearst was thus an 11.523% owner prior to the moment that the new shares became outstanding.

[6] Hearst only owned 9.75% of the outstanding shares of Local.com once the new shares were included in the sum of outstanding shares. Once the 2,356,900 additional shares were included, Local.com had a total of 15,340,586 shares outstanding, 1,496,117 of which were beneficially owned by Hearst.

[7] All hours, unless otherwise noted, refer to Eastern Standard Time.

Plaintiff asserts that filing the 8-K at 4:32 p.m. triggered a cancellation and re-granting of Hearst's warrants at the newly agreed upon price and that Hearst was an insider at 4:32 p.m. because the new shares had not been issued to the third parties until 4:45 p.m.  In more plain terms, Plaintiff asserts that Hearst violated section 16(b) by thirteen minutes—the gap in time between the filing of the 8-K at 4:32 p.m. and the email from Local.com instructing the Transfer Agent to issue the certificates at 4:45 p.m.

On February 11, 2008, Hearst moved for a judgment on the pleadings.  Hearst asserted that, based on the pleadings, the new shares were owned by the third parties prior to the filing of the 8-K, resulting in Hearst owning less than ten percent of Local.com at the time that the Form 8-K was filed.  This Court reserved judgment on that motion in a hearing on March 12, 2008.  On June 26, 2008, pursuant to the agreement of Plaintiff and Hearst, this Court ordered that Hearst's motion for judgment on the pleadings be converted to a motion for summary judgment.

**II.     Discussion**

As per the Court's order, Hearst moves for summary judgment in the following proceeding.  Summary judgment shall be granted when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).  The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In deciding a summary judgment motion, the court must "resolve all ambiguities and draw all reasonable

inferences in the light most favorable to the party opposing the motion." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

Section 16(b) of the Exchange Act seeks to deter insiders, who are presumed to possess material information about the issuer, from using such information to gain an advantage over persons with whom they trade. *See* 15 U.S.C. § 78p. The statute is violated when any person who owns more than ten percent of any class of the issuer's registered equity securities derives a profit from the matching of any purchase and sale or any sale and purchase of an equity security within a six-month period. *Id.* Donoghue asserts that Hearst violated section 16(b) the moment that Local.com filed the 8-K. This assertion is based on two premises. First, Donoghue claims that the 8-K filing triggered a deemed purchase of Hearst's warrants because the "discretionary reductions in the exercise prices" of the warrants were "material changes in the terms of those warrants resulting in a deemed cancellation of the pre-existing warrants and a re-grant of new warrants." (Compl. ¶ 14.) Second, Donoghue asserts that Hearst was an insider at 4:32 p.m. because the new shares of Local.com were not issued to the third party investors until 4:45 p.m.

Hearst moves for summary judgment on the claim that it was not an insider at the time that the 8-K was filed. Hearst contends that the third parties owned the new shares of Local.com when their full payment was received by Local.com at 4:06 p.m.[8] Because the vesting of ownership in the third parties at 4:06 p.m. resulted in Hearst no longer being an insider, Hearst argues that it was could not have violated section 16(b) at 4:32 p.m. when the Form 8-K was filed. This Court finds that Hearst was not an insider when

---

[8] As noted earlier, Hearst only owned 9.75% of the outstanding shares of Local.com once the new shares were included in the sum of outstanding shares.

5

the deemed purchase was made because the third parties owned the new shares of Local.com when payment was received by Local.com.

The issue in this case is ultimately whether the third parties owned their new shares of Local.com before 4:32 p.m., the moment at which Hearst's deemed purchase was made.[9]  Hearst did not commit a section 16(b) violation so long as Hearst's insider status was extinguished through the increase in outstanding shares before the time of its deemed purchase.  At 4:06 p.m., prior to the time of the deemed purchase, payment of full consideration by the third parties was received by Local.com via wire transfer directly into its account.  The only steps that took place after 4:06 p.m. were the filing of the Form 8-K, a condition of Hearst's consent, and the issuance of the certificates to the third parties.  Neither of these events was necessary to vest ownership in the third party investors.

Plaintiff does not contest the well-accepted rule that ownership of a security does not turn on the possession of a share certificate because the issuance of a share certificate is merely an indicium of ownership.  *In re Rappaport*, 487 N.Y.S.2d 376, 378 (App. Div. 1985); *In re Zarnin*, 645 N.Y.S.2d 304, 305 (App. Div. 1996); *e.g.*, *In re Chubby's Parkchester, Inc.*, 94 F. Supp. 701, 704 (S.D.N.Y. 1951) (holding that a person who provided funds "to the corporation in payment for stock therein to be purchased by him . .

---

[9] Under the rules promulgated by the SEC for the interpretation of section 16, the determination of ten percent owner status is to be based on the standards of beneficial ownership defined in section 13(d) of the 1934 Act.  *C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) ("The intent of the SEC to define 'ten percent' under Section 16 as it is defined under Section 13(d) could not be clearer.").  Section 13(d)(4) defines the percentage of ownership as "the amount of the outstanding securities of such class."  15 U.S.C. § 78m(d)(4).  Section 13 does not define the term "outstanding" security, and the issue does not appear to have been litigated in the context of section 13.  However, both parties agree that, in this context, outstanding securities are those securities owned by the shareholder.  The litigants in this case essentially agree with the statement of the D.C. Circuit that outstanding stock "means stock in the hands of shareholders, not stock in the treasury."  *Nerkin v. Standard Oil Co.*, 810 F.2d 1230, 1232 (D.C. Cir. 1987) (citation omitted).  In *Nerkin*, the D.C. Circuit suggested that an outstanding share is a share over which a stockholder enjoys the privileges of ownership, for example, stock that can be voted by the shareholder.  *Id.*

6

. thereby became a shareholder of the corporation notwithstanding that he never received a stock certificate"). Plaintiff also does not contest the general rule that the privileges and rights of ownership are gained once the full consideration has been tendered for the security. *Rappaport*, 487 N.Y.S.2d at 378 ("When the consideration for shares has been paid in full, the subscriber is considered a holder of the shares and is entitled to all rights and privileges thereof.") (citation omitted); *United States Radiator Corp. v. State of New York*, 101 N.E. 783, 785 (N.Y. 1913) (stating that "it is the payment, or the obligation to pay for shares of stock, accepted by the corporation, that creates both the shares and their ownership"); *Walsh v. Somerset Group, Inc.*, 357 N.Y.S.2d 301, 301 (App. Div. 1974) (stating that full payment for shares afforded the purchaser all the rights and privileges of a holder of the shares). Plaintiff also does not contend that the filing of an 8-K is generally necessary to confer the rights and privileges of ownership on investors.

Plaintiff instead attempts to look past these well-settled rules by looking to the requirements of the SPA, the specific agreement between Local.com and the third party investors. Plaintiff's argument rests on the rule that ownership "will be found to have vested if there was an agreement to transfer the shares, the agreed upon consideration was paid and any conditions precedent to the issuance of the shares have been satisfied." *Serdaroglu v. Serdaroglu*, 621 N.Y.S.2d 806, 808 (App. Div. 1994). Plaintiff asserts that the SPA defined the moment of ownership of the new shares, and that to fulfill conditions precedent of the SPA the third party investors were required to wait for Local.com to file the 8-K and for an officer of Local.com to deliver a certificate of compliance attesting that Hearst's consent was effective. (Pl. Mem. Opp'n Mot. Summ. J.)

Plaintiff argues that the obligation to wait for these additional steps can be found in sections 3 and 7 of the SPA.  Section 3 addresses the "Representations and Warranties of the Company."  Section 3(e) requires that "[a]ll consents, authorizations, orders, filings and registrations which the Company is required to obtain . . . have been obtained or effected on or prior to the closing date." (SPA at 7, Ex. D Wargo Decl.)  Section 7 of the SPA sets forth the "Conditions to Each Buyer's Obligation to Purchase."  Section 7(ix) requires satisfaction of "all covenants, agreements, and conditions required by the Transaction Documents."[10] (SPA at 23, Ex. D Wargo Decl.)  Plaintiff's theory is that these two sections created an obligation of the third party investors to wait for Local.com to obtain all necessary consents and satisfy all necessary conditions before the investors acquired ownership of the shares, which included the requirement to wait for the 8-K to be filed and the related correspondence to be delivered.

The plain language of the SPA, however, does not create any obligation to wait.[11] Neither the language of section 3(e) nor of section 7 places any requirement on the third party investors; these sections only place requirements on Local.com.  As noted by Plaintiff, section 7 does mention that the buyer can waive the section 7 obligations provided, among other things, that he gives written notice of his waiver.  However, contrary to Plaintiff's suggestion, the language in section 7 addresses waiver of the buyer's right to sue and does not suggest that without waiver the buyer must wait until

---

[10] The transaction documents are defined in section 3(b) as "the Warrants and each of the other agreements entered into by the parties hereto in connection with the transactions completed by this Agreement . . . ." (SPA at 6, Ex. D Wargo Decl.)

[11] Section 7 begins as follows: "The obligation of each Buyer hereunder to purchase the Common Shares and the related Warrants at the Closing is subject to the satisfaction, at or before the Closing Date, of each of the following conditions, provided that these conditions are for each Buyer's sole benefit and may be waived by such Buyer at any time in its sole discretion by providing the Company with prior written notice thereof." (SPA at 23, Ex. D Wargo Decl.)  Section 7 then sets forth numerous conditions including the condition in section 7(ix), which Plaintiff relies on in her brief.

after the conditions are completed to assume ownership. In sum, Plaintiff points to no specific language that leads to an obligation to wait to assume ownership; and this Court cannot find any such language in the SPA.

Given the longstanding rule that ownership is gained once the full consideration has been paid, and the fact that there is no condition precedent in the SPA limiting the time when ownership is assumed, this Court holds that ownership was vested when full consideration was paid to Local.com at 4:06 p.m. As such, Hearst was not an insider at 4:32 p.m. and therefore is not liable for the alleged deemed purchase that took place at that time.

For the foregoing reasons, Defendant Hearst's motion for summary judgment is granted. A consequence of our determination that Hearst has no liability under Section 16(b) of the Securities Exchange Act of 1934 is to render moot Hearst's cross-claims against Defendant Local.com. Accordingly, we dismiss the Hearst cross-claims as moot, without prejudice as to their reassertion in the event that an appellate court reverses our ruling as to Hearst's non-liability.

**SO ORDERED.**

Dated: February 2, 2009
       New York, NY

_____
Leonard P. Sand
U.S.D.J.